LINDELL *et al.*, Respondents, v. McLAUGHLIN *et al.*, Appellants.

1. There may be an *estoppel in pais* as to the boundary line between two adjoining proprietors although no express agreement may have been made between them as to the location actually made; nor is it essential that the proprietor claiming the benefit of the estoppel should enclose up to the line; it is sufficient, if it would work a practical fraud upon him, to allow the other to disturb a location made, and acquiesced in, by himself.
2. The doctrine that possession of part is possession of the whole is inapplicable to such a case.

*Appeal from St. Louis Land Court.*

The facts in evidence in this cause sufficiently appear in the opinion of the court.

The following are the instructions given for the plaintiffs

alluded to below in the opinion of the court: "1. If the jury find from the evidence that the land in dispute is embraced within the tract claimed by the plaintiffs under Fry as described in the deed given in evidence, and if they find that under that deed and immediately following its date, down to the commencement of this suit, the plaintiffs had actual possession, by enclosure of the greater part of the tract, claiming the whole tract, the law imputes to them the possession of the whole tract, though part of it may be beyond the enclosure ; and that possession is good as against the defendants unless they prove open, notorious, actual, adverse possession in themselves or another, for twenty consecutive years prior to the commencement of this suit. 2. The fence, in order to become an estoppel to plaintiffs' action, must have been built as a dividing fence between Fry and Lucas, or between plaintiffs and Lucas, and must have been mutually agreed upon as such between the plaintiffs and Lucas or Fry and Lucas, and the burden of proving said facts is upon the defendants. If the plaintiffs built their fence to enclose their land in whole or in part, and, by accident or mistake as to their true lines, left out a part thereof on the west to which they had a title by deed, such fence and the building thereof by plaintiffs, and the possession of the land so fenced, form no estoppel against the plaintiffs claiming and recovering their true lines in this suit according to their deed. 3. If a party, in enclosing his land, erroneously or mistakenly leaves out of his enclosure a portion thereof, this is no evidence of any estoppel to bar him from claiming according to the extent of his true title. 4. The taxes paid by James H. Lucas, the tax receipts therefor, and the entries in the assessor's books of the lands assessed to the Lindells adjoining the premises in question, are not any evidence affecting the title to the premises in question, and are not any evidence of estoppel against the claim of the plaintiffs to the premises in question in this suit. 5. The verbal declarations of the plaintiffs, or either of them, as to the extent of their tract, made to any other person than John B.

3—VOL. XXX.

C. Lucas or James H. Lucas, are wholly inadmissible to affect the question of title or boundary to the premises in question, and the jury is instructed to disregard the same. Such verbal declarations do not in any manner estop the plaintiffs from claiming the true lines of their tract. 6. If the jury find for the plaintiffs they will also assess as damages against the defendants the rents and profits of the premises in question from the time of the commencement of this suit and the monthly value of the rents and profits thereof."

*Glover & Richardson*, for appellants.

I. There was clearly an estoppel *in pais*. All the elements constituting an estoppel *in pais* exist. 1st, an admission inconsistent with the claims offered to be set up; 2d, action by the other party upon such admission; 3d, an injury by the withdrawal of the admission. The first instruction was calculated to mislead the jury. The question of time did not enter into the case. The verbal declarations were improperly ruled out by the instruction No. 5. The instruction given was erroneous. (1 Greenl. Ev. § 207; 26 Verm. 373; 7 Cow. 762; 12 Wend. 423; 7 Johns. 238; 9 Barb. 618.) It is not necessary that there should be an express agreement. (12 Wend. 130; 18 Wend. 157; 9 Johns. 99; 11 Johns. 122; 16 Mo. 273.)

*B. A. Hill*, for respondents.

NAPTON, Judge, delivered the opinion of the court.

The instructions given for the plaintiffs in this case were not, in our judgment, calculated to lead to a proper adjustment of the controversy.

The first instruction is a mere abstraction, outside of the facts in evidence, and tending to throw no light upon the questions really contested. The legal principle asserted is undoubtedly correct, but it has a tendency to withdraw the investigations of the jury from the defence which is relied on. The case was not one of a proprietor taking possession

of a part of his tract and claiming the whole. The case attempted to be made out by the defendants was of an indisputed possession of the plaintiffs, of what they supposed to be their whole tract, and an entire absence of any claim to anything outside of their actual enclosure. Whether the plaintiffs were entitled to go beyond their enclosure and claim and recover according to their lines as designated in their deed, under the circumstances and facts in evidence, was the point to be determined, and the instruction furnishes no guide to the determination of this question.

The second instruction is directed to the questions at issue, and the general proposition asserted in its first clause may be conceded to be correct. The objection to this instruction, as well as to the three instructions which immediately follow, is, that they select detached facts, and pronounce each separate fact insufficient in law to sustain the defence, without determining upon their effect as a whole and continuous, connected transaction.

To understand the points of law presented by the record, it is necessary to refer to the main facts, which appear to be these. Jeremiah Conner may be considered the original owner of the common field lot or forty arpent lot, concerning a portion of which this dispute has arisen. In November, 1821, Conner conveyed the west half of this lot to Col. O'Fallon, and in June, 1824, the east half was conveyed to one Fry, who immediately took possession of his half and enclosed it. The plaintiffs purchased from Fry's administrator in 1825 or 1826, and a deed was made to them in 1827. In 1828 or 1829 they put up in place of Fry's fence a more substantial and permanent enclosure, made of posts and rails—the posts being of cedar. In 1824, O'Fallon conveyed one arpent on the east end of his half of the forty arpent tract to Judge Lucas—the sale having been made a year or two before this. O'Fallon conveyed to the Finneys about ten arpens in 1831, west of and adjoining to the one arpent previously sold to Lucas. The sale to the Finneys had taken place two years before the deed was made, and they had en-

closed their land as early as 1829. All these sales and locations under them, by O'Fallon to Lucas and the Finneys and to others, were made with reference to the western fence of the plaintiffs as being the true division line of the tract. More accurate surveys, however, made before this suit was instituted, showed that the original tract contained more than forty arpens; that Fry's division line or fence, adopted by the plaintiffs, was nearly two arpens east of the true division line, although it was twenty arpens west of the eastern line of the tract. The arpent purchased by Lucas, now the subject of this suit, was never enclosed by him or by his representatives, but the lot purchased by the Finneys and located just one arpent from the western fence of the plaintiffs was not only enclosed, but was covered by large and valuable improvements made long before this suit was brought; and such was also the case with reference to portions of O'Fallon's half of the tract west of the Finneys. Judge Lucas had exercised such acts of ownership over the vacant space of ground between the plaintiffs and the Finneys as paying the taxes on it, causing the ravines on it to be filled up, protecting it from nuisances. It was immediately in front of his residence and formed an open passway from his gate to the old St. Charles road. The lot was purchased by him as an outlet to this road—as stated by Col. O'Fallon, his vendor—and the lines were pointed out to him by O'Fallon. There was no evidence of any personal communication between the plaintiffs or Fry and O'Fallon, Lucas or the Finneys relative to these lines. There was evidence to show that the plaintiffs were perfectly aware of Lucas' claim to the vacant arpent.

Upon this state of facts, it is apparent that the mistake made in the original survey, or practical location of the plaintiffs' lot, has occasioned a loss of one arpent or more to the plaintiffs or the defendant; and the question substantially is, who must bear this loss?

In Rockwell v. Adams, 7 Cow. 761, it was said: "It is not necessary, in order to make an actual practical location

control the courses and distances in a deed, that the party making such location, or subsequently recognizing it, should, in all cases, know that the effect of it would be to give him less land than he would otherwise be entitled to; nor that there should be an express agreement to abide by such line. An acquiescence' for a length of time is evidence of such agreement. Where the line has been acquiesced in for a great number of years by all the parties interested, it is conclusive evidence of an agreement to that line." This case was before the supreme court again in 6 Wend. 469, and finally settled by the court of errors in 16 Wend., where the chancellor intimates, as a proper modification of the original opinions of the supreme court, that the length of time during which the acquiescence must continue ought to be such as would bar a right of entry under the statute of limitations; or there should be an express or implied agreement to the erroneous line; or the cause must be one in which a correction of the line would result in great injustice to the party acquiescing, brought about by the conduct and language of the party making the erroneous location.

In Dibble v. Rogers, 13 Wend. 539, it is said that long acquiescence in an erroneous location would authorize the jury to find that the plaintiff had agreed to a location different from that given by his deed; and, whether he knew his rights or not, such location and acquiescence would conclude him.

The plain and simple principle of natural equity, which lies at the foundation of these New York decisions and constitutes, in truth, the main reason for the various modifications of what have been termed estoppels *in pais*, is that, where a man misleads another by his acts or words, so as to occasion an expenditure of money on the part of the latter, the former will not be allowed to change his assertions or claims to the detriment of the person misled. It is a practical fraud, although no fraud may be intended, to permit this to be done.

Two circumstances in the present case seem to be relied

on to preclude the defendants from the benefit of the estoppel set up—the absence of any express agreement between the plaintiffs and Lucas concerning the line, and the fact that Lucas never enclosed his lot.

In what respect would proof of a positive agreement, between Lucas and the plaintiffs, as to the erroneous division line between them, have altered the case ? If the plaintiffs fixed the line and the defendants acquiesced in it, how could the plaintiffs bind themselves more effectually ? A positive agreement might place the defendants under stronger obligations to abide by the line if it had been their interest to disturb it, but it is hard to see how the plaintiffs could do more than they have done. If they had communicated with Judge Lucas in person and informed him of what they had done, and their reasons for so doing, and pointed out the fence on the western end of the enclosure as their line, would the case have been at all changed in any material point ? A man's actions are generally more relied on than his declarations.

It would be strange if the failure of Judge Lucas to enclose this ground, purchased as it seems to have been for the very purpose of being left open, should have the effect of depriving his representatives of a defence to which, under other circumstances, they might be entitled. We, of course, have no reference to the effect which an enclosure by a fence would have had upon the case considered with respect to the statute of limitations. We are considering the case solely with reference to the effect of the acts and declarations of the plaintiffs upon the defendant's rights. In this point of view, of what use would a fence have been to Lucas ? How would the case have been altered ? The only purpose a fence or enclosure could serve would be to apprise the Lindells that he (Lucas) claimed the lot. But may not the knowledge of the defendants of this fact be proved by other circumstances as well ?

The fact which, in our judgment, has the most significant bearing upon the decision of this case, is the total loss of the

entire lot to Lucas' representatives, which inevitably results from the correction of the division line now. Undoubtedly such a result, if fairly attributable to any act or negligence of Lucas and not produced by any conduct on the part of the Lindells or their vendor, could not and ought not to be remedied by doing injustice to the plaintiffs. But if this line was established by the Lindells, or by Fry, their vendor, nearly thirty years before the institution of this suit; if O'Fallon and his vendees were governed in their locations and improvements by this line; if a change of the line now is to have the effect of destroying Lucas' title entirely, and but for the statute of limitations producing heavy losses to all the purchasers under O'Fallon of the west half of the tract, what injustice is there in confining the plaintiffs to a line fixed by themselves and acquiesced in by all parties for a period exceeding that required by the statute of limitations to give title?

The judgment is reversed and the case remanded. The other judges concur.