STUMPE, Appellant, v. KOPP.

Division One, February 22, 1907.

1. EJECTMENT: Evidence: Unofficial Survey. A survey which does not purport to be the official act of the county surveyor, but (naming no principal) was signed by "Jul. Wilhelmi, D. C. S.," was not entitled to record and the record is not admissible in evidence. But if the record is introduced by defendant, plaintiff, who had introduced a like survey of the same land signed by the same person in the same way and recorded in the same record, cannot complain.

2. ———: ———: ———: Appellate Practice: Harmless Error: Cured By Instruction. A judgment will not be reversed unless error materially affecting the merits of the case, as finally put to the jury, was committed by the trial court. And where the court, in effect, told the jury that the line as contended for by plaintiff was the true division line between plaintiff's and defendant's land, error in admitting in evidence for defendant a

survey made by an unauthorized person, which made the divis-
ion line as contended for by defendant, will not work a re-
versal.

3. ———: **True Line: Showing Witness to Be Mortgagee.** Where
a witness who holds a warranty deed from defendant testifies
that he only claims under his deed up to the true line, wherever
it is, it is not error to permit the defendant to show by him on
cross-examination that his deed is in fact a mortgage, and that
defendant is a mortgagor in possession and the real party in
interest. In such case, where no element of estoppel inter-
poses, it is permissible to show by oral evidence that a deed
absolute on its face is a mortgage.

4. ———: **Boundary Line: Acquiescence: Limitations.** Acquies-
cence in a division line by adjoining owners, litigant's ances-
tors, is sufficient to authorize the jury to find the line was an
agreed line, and is sufficient to establish adverse possession for
more than ten years; and such acquiescence may be shown by
oral testimony of acts, possession, establishing of fences, sur-
veys, field courts, etc.

5. ———: ———: **Agreed Settlement.** An agreement settling a
disputed boundary line need not be shown by direct evidence,
but may be shown by such conduct of the parties, their acts,
and such long acquiescence and recognition of a given line as
will justify the jury in inferring that there was a prior agree-
ment settling such line.

Appeal from Franklin Circuit Court.—*Hon. Wm. A.
Davidson,* Judge.

AFFIRMED.

*Jesse H. Schaper* for appellant.

(1)   The trial court committed error in admitting
in evidence the statements of witness Thias to the ef-
fect that the warranty deed dated August 29, 1898, from
Kopp to Thias, was an agreement to secure a debt ow-
ing by Kopp to Thias.  The error is that the court per-
mitted verbal evidence to be admitted to vary or con-
tradict a valid deed, containing covenants of general
warranty, which by its terms is wholly free from uncer-
tainty as to its object or extent.  The effect was to sub-

stitute a new and different contract for the one embodied in the deed itself. Greenleaf on Evidence (14 Ed.), sec. 275; Laclede Construction Co. v. Moss Tie Co., 185 Mo. 25. (2) Conforming to an erroneous line, while in good faith believing it to be the true line, and intending to claim only to the true line, estops no man from claiming to the true line whenever it is afterwards ascertained. Patton v. Smith, 171 Mo. 243; 4 Am. and Eng. Ency. Law (2 Ed.), 872; 1 Jones on Real Prop., sec. 356; Kincaid v. Dormey, 51 Mo. 552; Knowlton v. Smith, 36 Mo. 513; Schad v. Sharp, 95 Mo. 579. It is impossible for defendant to maintain this defense under his answer asserting paramount title to the land adjoining plaintiff on the north, in the face of the undisputed proof that defendant Thias is and was the owner in fee of all such land at and before the commencement of this suit. (3) There was no substantial evidence in the case to support the verdict of the jury. Westmeyer v. Gallenkamp, 154 Mo. 36; Brown v. Hartford, 173 Mo. 194; R. S. 1899, sec. 866.

*O. E. Meyersieck* for respondent.

(1) Where adjoining proprietors of land are both ignorant as to the location of the true line between their respective lands, and they fix and agree upon a boundary line and take possession in accordance with such agreement, it is binding not only on the parties to such agreement but also on all persons claiming through or under them. Ernsting v. Gleason, 137 Mo. 594; Goltermann v. Schiermeyer, 111 Mo. 422; Jacobs v. Mosely, 91 Mo. 457. Such agreement may be shown by facts and circumstances as well as by direct evidence. The long and continued occupancy and acquiescence in location of boundary line, and the acts of the parties treating the same as the true boundary line, will authorize the jury to infer an agreement between the parties establishing such line. Turner v. Baker, 64 Mo.

218; Schwartzer v. Gebhardt, 157 Mo. 99. The building and maintaining of the division fence, in the manner the fence mentioned in the evidence in this case was built and maintained, is strong evidence of such agreement. Possession and use up to such line is evidence of such agreement. Schwartzer v. Gebhardt, 157 Mo. 99. And where the possession up to the fence under an apparent claim of ownership has been held for more than ten years, the burden is on the plaintiff to show that the holding was subject to future ascertainment of the true line. Lemmons v. McKinney, 162 Mo. 531. This the plaintiff did not show by any evidence in the case. (2) The court did not err in admitting statements of Niederholtmeyer on the question of boundary. This class of cases comes within the exceptions to the hearsay rule. 1 Greenleaf, Evidence (13 Ed.), sec. 1452; 4 Am. and Eng. Ency. Law (2 Ed.), 850. Defendant has had open, notorious, exclusive and adverse possession so long that the evidence as to same comes within the rule applicable to ancient boundaries.

LAMM, J.—Stumpe and Kopp are neighbors in Franklin county, owning farms coterminous with each other—Stumpe in section 24, township 44, range 2, and Kopp in section 13, bordering on the north. There is an ancient rail fence dividing the possessions of one from those of the other—a partition fence. After this fence was built, time flew by and Kopp's part ran down at the heel—fell into decay. Thereat as the fence fell down, these neighbors fell out and a squabble arose over the mending of this fence. Thereat Stumpe, on March 5, 1903, procured Mr. Moore, the surveyor of Franklin county, to run the line between said sections 13 and 24. Moore's line showed Kopp had one and four-fifths acres of Stumpe's land in his field. Thereat Stumpe laid claim to it. Kopp, being in possession and claiming the land as his, denied Stumpe's title. There-

upon Stumpe sued Kopp and one Thias in ejectment, was cast below (on a jury trial) and appeals here.

The parcel of land in dispute is described as: "A strip of land off of the north side of the northwest quarter of the northeast quarter of section 24, township 44, range 2, said strip of land being of the width of seventy-five feet on the west end thereof, and of the width of forty-five and one-half feet on the east end thereof." From a third to one-half acre is in cultivation, and the balance does not lie to the plow. It is worth little, and its rental value is put at $2.50 per annum on Stumpe's own estimate; so that the litigation may be justly designated as, "Much Ado About (little or) Nothing"—literally, a *fuss*.

The petition is in conventional form, laying the ouster as of March 6, 1903.

Defendant Kopp alone answered; and his defense was: (1) a general denial, (2) adverse possession for more than ten years, and (3) an agreed line, to-wit, the line of said old rail fence, which line, the answer said, was established by agreement more than twenty years before by plaintiff's and defendant's grantors; that the fence was built on said agreed line and defendant claimed the land up to said line for more than twenty years, had made valuable improvements and had occupied and claimed said strip of land for said four lustrums without objection on the part of plaintiff's grantors. Wherefore, defendant says, plaintiff is estopped from making any claim to said land.

I. At the trial plaintiff introduced evidence showing a complete paper title to the whole of the northwest quarter of the northeast quarter of said section 24 from an original Spanish grant to one Mackay, confirmed by a United States government survey, through *mesne* conveyances down to him. He also introduced the survey of Mr. Moore, as aforesaid, and other surveys (one in March, 1873, and one in November, 1878) showing

that the strip of land in dispute, bounded on the north by the Moore line and on the south by the rail fence, lay within the bounds of said northwest quarter of the northeast quarter and his proof was further of such character that, among other instructions, the court felt constrained to give him the following:

"The court instructs the jury that plaintiff, William Stumpe, has shown by the deeds and title papers read in evidence that he is the owner of the record title from the United States Government to date of the northwest quarter of the northeast quarter of section 24 in township 44, range 2 west, in Franklin county, Missouri, including the land described in the petition in this suit."

Closely read, it will be seen that the force and effect of this instruction was to declare Moore's line the true line; and its force was further to make a *prima facie* case for plaintiff. In this condition of things plaintiff complains of the introduction of certain documentary evidence which tended to show that the true line was a line run in August, 1873, by one Wilhelmi, which line agrees practically with the rail fence. All this came about in this way: As we gather from the record, there was a dispute in 1873 between defendant's father, Charles T. Kopp, who then owned defendant's land, and one Niederholtmeyer, who then owned plaintiff's land. As a sequel thereto, it was discovered that certain Government corners were lost; and the then adjoining proprietors paid the expense of what is called in the record a "field court" to re-establish these lost corners and thereby establish the true line. This field court, ostensibly, seems to have been held under Revised Statutes 1899, chapter 59, entitled, "On the Perpetuation of Testimony"—that is, article 2 of said chapter entitled, "Establishing Land Boundaries." [See 2 Wag. Stat. 1872, p. 994, secs.

22, et seq.]   But if notice was given of the taking of
depositions by said field court, as required by the stat-
ute, if depositions were taken, signed and filed and
properly certified by two disinterested justices, and if
a survey was made in accordance with said depositions
and a certificate and plat thereof executed, and the
same, with said depositions, etc., recorded in the re-
corder's office as contemplated by that statute, no at-
tempt was made to show such facts by defendant. But
defendant did offer and was allowed over plaintiff's
objection (and exception saved) to introduce in evi-
dence the record of a certificate and plat of survey,
found in a book kept by the surveyor of Franklin coun-
ty, and called survey No. 97, in which certificate the
acting surveyor (Wilhelmi) refers to depositions taken
before two justices of the peace of Franklin county,
naming them, on May 14th, 1873. He further certified
that he ran a line in accordance with said depositions;
and it seems the line so ran and the corners thus re-es-
tablished agree with the line of said rail fence substan-
tially.

It will not be necessary to set forth plaintiff's ob-
jections to survey No. 97, nor consider them by or
large. In our opinion the record of the survey might
have been properly excluded, *strictissimi juris,* if for
no other reason than that such survey did not purport
to be the official act of the county surveyor, but seems
to have been the act of Wilhelmi, who (naming no
principal) signs himself "Jul. Wilhelmi, D. C. S."
Hence, the plat and certificate were not entitled to
record, and the record was inadmissible in evidence.
[Carter v. Hornback, 139 Mo. 238.]

But we cannot see that plaintiff was either mater-
ially hurt by, or, under the whole record, is entitled to
much judicial sympathy because of the introduction of
that survey and certificate. And this is so, because:

In the first place, plaintiff himself introduced the
record of a certificate and survey made by the same

man a few months prior, who signs himself in that instance, "Jul. Wilhelmi, County Surveyor D." This record was read from the same book as the other, and by its introduction plaintiff should be deemed to have measurably vouched for both book and officer; that is, it comes with ill grace for him to discredit either. By so doing plaintiff blows hot and blows cold in the same breath; and the infelicity of blowing in that way is illustrated in the fable of the Man and Satyr (see Aesop's Fables)—it being permissible, we think, to levy on and seize a parcel of the homely wisdom of these immortal fables to point a moral in the law, now and then; (for may not a judicial wayfarer, traveling in the dry and dusty highways of the law, at spells lighten his labor without lowering the dignity of his case by gathering a nosegay for use as do other wayfarers, so long as he does not loiter afield and miss the main-traveled road to ultimate justice?)

If we read the abbreviations "D. C. S.," in defendant's certificate, as standing for "deputy county surveyor," we ought also to go upon the theory that courts are presumed to know what everybody else knows, and, hence, we should interpret "County Surveyor D.," in plaintiff's certificate, as meaning "county surveyor, deputy"—that is, that Wilhelmi was merely a deputy in both instances, and, by casting the shadow of his own personality over his unknown principal, placed said principal in (at least) partial eclipse, while at the same time he "exalted his own horn" unduly.

In the second place, the last Wilhelmi line, in the evolution of the case, is no more and no less than the "agreed line" referred to in defendant's answer, presently to be considered.

In the third place, the court (as heretofore said), flatly told the jury in effect, in the foregoing instruction, that Moore's line was the true line, that is, that the strip of land in dispute lay within the borders of

northwest quarter of the northeast quarter of section 24 and did not lie within the borders of Kopp's land in section 13, as it would do if Wilhelmi's last line was the true line between the sections.

We conclude, then, that the error (if any) in admitting the record of that certificate and plat of survey did not materially affect the merits of the case as finally put to the jury, and, therefore, we are forbidden to reverse and remand the cause on that score under Revised Statutes 1899, section 865.

II. Defendant Thias was placed on the stand by plaintiff. It seems that Kopp had made a deed to Thias of forty acres of land lying in section 13, hard by plaintiff's on the north. It seems that as part of the same transaction Kopp had taken back a bond for a deed and a lease from Thias. It is not contradicted in the record that this deed, bond and lease were intended as security for a loan of money from Thias to Kopp—in legal effect, but in a roundabout way, all these papers, read together in the light of the understanding between Kopp and Thias, constituted a mortgage. When Thias was on the stand he testified for plaintiff that he only claimed under his deed up to the true line (unknown to him) wherever it was. On cross-examination, however, he was allowed to testify that his only interest in the land was as security for a loan of money—in effect, that Kopp owned the land. The object of this oral testimony elicited by cross-examination was to show that Kopp was a mortgagor in possession, and, in the eye of the law, Thias was a mere mortgagee out of possession; and that, in considering the issue of adverse possession, tendered in Kopp's answer, the question was not the claim of Thias as to the line, but the question was the claim of Kopp.

Plaintiff's learned attorney objected to the introduction of this oral proof and saved an exception to the adverse ruling of the trial court. Here he argues

that the effect of such testimony was to vary the terms of a written instrument, and, hence, it was inadmissible. But we think the position untenable. As between Kopp and Thias it could not be contended that Kopp's deed, absolute on its face, could not be shown by oral testimony to be a mortgage. [Book v. Beasly, 138 Mo. 1. c. 460, and cases cited.]

Why should the same rule not obtain between Kopp and Stumpe? If Stumpe had been misled by Kopp's use of his conveyance to Thias and thereby had materially changed his situation by placing reliance upon the fact that the deed was absolute, there might be some force in the argument that, as to him, Kopp would be estopped to show the truth—that is, the truth about that deed, bond and lease. But there is no element of estoppel in the matter; there has been no change of situation here based on any such fact. Kopp is in possession and is defending his possession; he did not mislead Stumpe and ought not to be precluded in his defense by a mere superficial view of the dealings between himself and Thias, which dealings, as between him and Stumpe, come within the maxim, *res inter alios acta.*

A mortgage is literally a dead-pledge. Figuratively, a mortgagee may be said to hold with a death-grip—a mailed hand. May a mortgagee who sits complacently in the security of such pledge (as though in the shadow of a great rock in a thirsty land), holding an estate subject to a defeasance, be allowed the further privilege of precluding or frittering away the rights of the mortgagor to a strip of land on the edge of the estate by admitting his indifference as to where the line runs? Certainly not. We find no fault in the ruling of the trial court on this testimony; and the assignment of error on that behalf is disallowed.

III. At the trial defendant introduced evidence tending to establish the averments of his answer as to

adverse possession and an agreed line and estoppel. Defendant offered himself as a witness and testified in chief in support of both his said defenses. On cross-examination his testimony was shaken and the jury would have been justified in finding either way on his oral testimony. But the jury was the judge of his credibility; we are not; for while appellate courts have never released their hold on testimony so that they may not say there is no proof, yet the rule is to graciously accord to the triers of fact, who see and hear, the correlative right to weigh the testimony.

But the defenses of adverse possession for over ten years and of an agreed line, with improvements constituting estoppel, do not rest alone on the oral testimony of defendant. There are uncontradicted facts in the case which indirectly point with great cogency to an agreed line and such possession. For instance, after the field court was held plaintiff's grantors cleared their land up to the line then marked out on the earth's surface. The elder Kopp transferred the adjacent land in section 13 to Daniel Kopp, the defendant, in 1877. At that time one of plaintiff's grantors, Niederholtmeyer, owned the land south, in section 24. About 1882 the fence was built, half by Niederholtmeyer and half by defendant, and the clearing done as aforesaid. A little jog was put in this fence so that Kopp's half should be wholly on his side of the line, and Niederholtmeyer's half wholly on his side. Other subsequent surveys were made, covering the entire section line between sections 13 and 24. Niederholtmeyer, relying on these subsequent surveys, seems to have contested with other land-owners the correctness of Wilhelmi's survey made as a result of the field court; but he never did contest or dispute with defendant his right to hold up to the line represented by said rail fence. To the contrary, he entirely acquiesced in the same, leaving defendant in undisputed and full possession and claiming ownership. In this condition of

peace and accord, plaintiff appeared on the scene and took a warranty deed from Niederholtmeyer on September 20, 1894. He entered into possession of the land south of said rail fence, and, so far as this record shows, acquiesced in that line and Kopp's possession and use until he and Kopp disagreed over repairs of the fence. It is plain that plaintiff's position while at peace with Kopp was that the line was settled and satisfactory; but when ill humor took the place of good humor, and the Moore survey followed, then his acquiescence vanished and he went to law. Behold! how great a matter, a little fire kindleth.

Whatever was the very right of this case during the time these neighbors were in accord remains the very right of the case when in discord. Justice is not a weathercock to veer about with the moods of parties litigant, and, in our opinion, the case in its legal phase is determined by the proposition that an agreement settling a disputed boundary line need not be shown by direct evidence, but may be shown by such conduct of the parties, their acts, and such long acquiescence and recognition of a given line as will justify the jury in inferring there was a prior agreement settling such line. [Schwartzer v. Gebhardt, 157 Mo. l. c. 104; Jacobs v. Moseley, 91 Mo. l. c. 462-3; Goltermann v. Schiermeyer, 111 Mo. l. c. 422-3; Ernsting v. Gleason, 137 Mo. l. c. 597.]

It has also been held that where title in land has once matured by adverse possession, mere loose talk subsequently is not sufficient to unsettle such title. [Lemmons v. McKinney, 162 Mo. l. c. 530, et seq., and cases cited.]

Plaintiff complains that certain instructions were refused to him that were mandatory in form. We think the trial court was right in not giving those instructions.

Plaintiff claims that certain erroneous instructions were given for defendant. These instructions put the

case to the jury on the theories of adverse possession and an agreed line.    Plaintiff's counsel argues there was no evidence to sustain those instructions; but, as said before, we do not so read the record.    There was oral testimony, possession, acts, conduct, acquiescence for over twenty years, from which the jury could infer the agreement, and from which they could find adverse possession for more than ten years.

The decisions of this court are many and rich with learning on the question of boundary disputes; but the amount involved in this case (and no need of jurisprudence) will justify an extended consideration of these adjudications, the principles involved in boundary controversies being well settled and needing no new formulation.

The verdict was right and the judgment entered thereon is, accordingly, affirmed.

All concur.