M. C. OWENS and DELLA OWENS v. W. A. THOMAS and CORA THOMAS, Appellants.—98 S. W. (2d) 561.

Division One, November 12, 1936.*

---

*NOTE: Opinion filed at September Term, 1935, April 23, 1936; motion for rehearing filed; motion overruled at September Term, 1936, November 12, 1936.

*N. C. Hawkins* for appellants.

534

*McKay & Peal* for respondents.

BRADLEY, C.—This cause is in ejectment to recover a small strip of land ·in Pemiscot County. Trial was to the court without a jury, and judgment went for plaintiffs, and defendants, their motion for new trial being overruled, appealed.

Plaintiffs are husband and wife and so are defendants. The petition in form is conventional. The answer pleads adverse possession for more. than ten years, and in a separate count asks that the court determine title. The land in controversy is a small strip off the south end of that part of lot 1 in the northeast quarter of the northeast quarter, Section 26, Township 20, Range 11. The court made a special finding of facts in which it is *first* recited that defendants entered into the possession of ''a strip of ground or land *53* feet wide at the east, end and 67 feet wide at the west end off the south side of lot No. 1 of the southeast quarter of Section 23, and all that part of lot 1 in the northeast quarter of the northeast quarter of Section 26, all in Township 20 north of Range 11 east.'' Next, the finding recites ''that prior to the time of the purchase of the above said land by the plaintiffs that there had been erected a fence across the south end of the above described land which extended from a point at the east end of said tract of land *56* feet (north of the true line) and ran across the south end of said land to a point 67 feet north of the true south boundary line of said tract and that defendants wrongfully took possession of said strip of land.'' · The court further found that ''no true boundary line on the south end of said section of land had been officially established at or prior to the time defendants took possession of said strip of land;'' and it was further found ''that the possession of the defendants of such strip of land was not such as to constitute an adverse possession or invoke the ten-year

Statute of Limitations so as to give defendants any right, title or interest in or to said strip of land.'' Damages in the sum of $15 was found and the monthly rental value was fixed at $5.

In the judgment, which immediately follows the finding of facts, the strip is described as ''a strip of land *56* feet wide at the east end and *76* feet wide at the west end, lying north of the south boundary line as established by Charles S. Reynolds, civil engineer, and lying between said old fence line and said true south boundary line of the *first* above described land.'' Defendants point out the discrepancies in the figures respecting the width of the strip at the east and west ends in the finding of facts and the judgment, and also point out other defects in description. We have indicated some of these defects and discrepancies by italics. In view of our disposition of this cause, it is not necessary to especially deal with these discrepancies and defects. We might say, however, that we think the court intended to find and adjudge that the strip is 53 feet in width at the east end and 67 feet in width at the west end as plaintiffs plead in their petition. We think this is apparent, and also that *76* in the judgment was inadvertently written when *67* was intended, a mere typographical error by getting the figures transposed.

Defendants, appellants here, assign error: (1) On the overruling of their motion to make the petition more definite and certain; (2) on the refusal of a demurrer to the evidence at the close of the whole case; (3) on the exclusion of evidence; and (4) on an alleged excessive judgment as to the value of monthly rents. We rule these in the order stated.

■ The motion to make more definite is leveled at the description, in the petition, of the land sought to be recovered. It is alleged that on December 31, 1927, plaintiffs were entitled to the possession of all of lot 1 of the southeast quarter of Section 23 (we omit township and range) *and all that part of lot 1 of the northeast quarter of the northeast quarter of Section 26*, and being so entitled defendants, afterwards, and on December 31, 1927, ''entered into said premises and unlawfully withhold from plaintiffs a strip of land 53 feet (in width) at the east end and 67 feet at the west end in width off of the south side of the said above described tract of land.'' Plaintiffs, in the petition, described their *whole* tract of land which lies in Sections 23 and 26, and the *whole* is described as a *single* tract. Lot 1 (a part at least) of the southeast quarter of Section 23 lies immediately north of that part of lot 1 in the northeast quarter of the northeast quarter of Section 26. The location of the strip is, we think, quite clear in the petition, when the *whole* description is regarded as *one* tract. Hence, the motion to make more definite was properly overruled.

■ Was the demurrer to the evidence properly refused? This as-

signment goes to defendants' claim of adverse possession. The original petition was against defendant, W. A. Thomas, only, and was filed February 11, 1930. October 22, 1932, an amended petition was filed making defendant, Cora Thomas, a party, and she was served with process same day the first amended petition was filed. The cause was tried on a second amended petition. It is conceded that the common source of title was in John G. Hoyt, who, on March 1, 1928, conveyed to plaintiffs, by the entirety, "all of lot 1 of the southeast quarter of Section 23, and all that part of lot 1 of the northeast quarter of the northeast quarter of Section 26," containing in the aggregate 38.85 acres, more or less. March 20, 1925, Hoyt conveyed to defendants, by the entirety, "all that part of lot 1, lying north and west of the center of ditch No. 66, in the southeast quarter of the northeast quarter of Section 26," containing 25.95 acres, more or less. The strip in question is within the meander line of Little River and it was shown (although the government plat was not introduced) that when the government survey was made no subdivision lines were established, at least, not for that part of Sections 23 and 26 mentioned in this record. The fence mentioned above was on the north line of the strip, and this fence was erected in 1919 by one Connoy, who at that time was in possession of the land immediately north of the strip in question. Defendants claim that their possession, for the purpose of their defense of adverse possession, commenced in 1919. Arthur Fisk had entered into a contract with Hoyt for the land later conveyed by Hoyt to defendants, and defendants bought Fisk's interest and the Fisk contract was assigned to them, but defendants in their own name entered into a new contract with Hoyt. Defendants went into possession of the strip, and the land immediately south, in the spring of 1920, and Fisk "had been in possession about a year prior" to that time. Defendants, under their contract with Hoyt, had to make certain payments before getting a deed and these payments were made and the deed from Hoyt was executed, as stated, on March 20, 1925, but was not recorded until February 16, 1927. Neither the Fisk nor defendants' contract with Hoyt was recorded.

The controversy, except as to the character of defendants' possession, is about the *true line* between that part of lot 1 in the northeast quarter of the northeast quarter of Section 26, and that part of said lot in the southeast quarter of the northeast quarter of said section. As stated, defendants claim that they bought the land in said lot 1 up to the fence, that is, that the fence was on the north line of their land. Without going into detail as to the evidence of the surveyors who were witnesses for plaintiffs and who located this *line* or attempted to do so, it is sufficient to say that the court found from their evidence that the north line of the strip, at the east end, was 53 feet north of the *true line* and that the north line of said strip, at

the west end, was 67 feet north of the true line. Under this finding the conclusion must necessarily be that the strip in question was not included, either in the Fisk contract or in the contract or deed of defendants, but was included in plaintiffs' deed. The contracts were not introduced, but defendants' deed was, and we may assume that defendants' deed conveyed the same land described in the Fisk contract and the contract of defendants.

It is plain that neither plaintiffs nor defendants (nor their predecessors in title, so far as appears) knew where the true line was. Plaintiffs say in their brief that they "assumed the old fence was the true line." This fence was removed in 1929, but from the finding of the court we may proceed on the theory that the fence was on the north line of the strip in question.

As we view the record, we think the case turns on the application of the law to the rights of adjacent owners who have occupied lands up to a dividing fence *not* built on the true line between them. This rule may vary under different facts, but the general rule is that if such adjacent owners suppose "the fence to be on the true line, and for that reason only used and claimed the land up to the fence, then neither could acquire title against the other by adverse possession, for their respective possessions, however hostile, open and continuous, were not under a claim of right independent of the fence, but were asserted and maintained because the fence was deemed to be a correct boundary of the land on both sides. In other words, the two proprietors were not seeking to acquire each other's title to their respective lands, but were only treating a particular fence as a boundary line made or described in their respective muniments of title. Obviously, in such cases, when the land is subsequently surveyed according to the deeds of the parties, the line then marked out becomes the boundary to which each party thereto was claiming, and no possession by one of the lands of the other, when held and asserted with that intention, could be adverse." [Corrigan v. Early (Mo.), 183 S. W. 574, and cases there cited.] As stated, plaintiffs say that they "assumed the old fence was the true line." The record discloses that defendant, W. A. Thomas, on cross-examination, testified that "there was a fence through there when he bought; he thought the fence was on the line; . . . that he just bought what his deed conveyed. I imagine that is all I am claiming. . . . He said all the land he was claiming was the land conveyed by the deed." (Both direct and indirect discourse are used in the abstract in narrating the evidence.) It also appears that defendant, W. A. Thomas, employed one of the surveyors "to locate the line." Plaintiff, M. C. Owens, testified: "Mr. Thomas gets Mr. Gotcher and Mr. Reynolds (surveyors) to come and rerun the line, to run the land out, and then after they run the line he was dissatisfied, he wanted to run the land out to see how

he was coming out. Then they started out going down on his land on the west side and he said, 'To show you I don't want your land you go on to your line.' They had run the line further than Mr. Hagerman (a surveyor) had; he (Thomas) said, 'You go ahead to Mr. Hagerman's line.' In the meantime I had sowed alfalfa and he plowed it up." We might say that defendant, W. A. Thomas, denied making such statements to plaintiff, M. C. Owens.

In the finding of facts, as appears, supra, the court found that "the possession of the defendants of such strip of land was not such as to constitute an adverse possession or invoke the ten-year Statute of Limitations so as to give defendants any right, title or interest in or to said strip of land." It would seem from this finding, which is justified from the evidence, that the court was of the opinion that neither plaintiffs nor defendants intended to claim adversely the land of the other; they were merely mistaken as to the true line. Under this finding the facts square perfectly with the rule laid down in the Corrigan case, supra. Defendants' demurrer to the evidence was properly refused.

█ Complaint is made on the exclusion of evidence. Defendants had two witnesses present and desired to use them "on the issue" of possession, but were refused under a rule of the court that only three witnesses could be used "on any collateral matter." The issue of defendants' possession was not collateral, but no offering was made as to what evidence these witnesses would have given. In this situation there is nothing here for review under this assignment.

█ Was the judgment as to monthly rents excessive? As appears, supra, the judgment as to monthly rents was $5 per month, and by the judgment this sum is to be paid by defendants "until the said plaintiffs be restored to the possession of said lands and tenements." Judgment was rendered May 6, 1933. The time elapsed since the judgment to the filing of this opinion is thirty-five and one-half months. Some time will elapse hereafter before plaintiff is restored to possession. For the thirty-five and one-half months the judgment for monthly rents amounts to $177.50. It is apparent from the record that the monthly rents should have been fixed at one-twelfth of $5 or approximately forty-two cents per month. Plaintiff, M. C. Owens, on direct examination, testified that the monthly rental value was $5, but, clearly, he had in mind *annual* rent and on cross-examination frankly said so, and there is nothing to the contrary. In view of the confusion of figures as to the width of the strip at the east end and west end and other defects of description in the finding of facts and in the judgment, and in view of the excessive judgment for monthly rents, we know of no better way to correct these errors than by reversing the judgment and remanding the cause with direction. Evi-

dently every inch of this strip is *precious*, if not of great value. [See Thomas v. Owens (Mo. App.), 35 S. W. (2d) 1116.]

The judgment should be reversed and the cause remanded with direction to modify the judgment, as of the date of its original entry, so as to describe the strip in question as being a strip of land, 53 feet in width at the east end and 67 feet in width at the west end, off the south side of that part of lot 1 in the northeast quarter of the northeast quarter of Section 26, Township 20, Range 11, Pemiscot County, Missouri; and with the further direction to modify said judgment, as of the date of its original entry, so as to fix the monthly rental value at 42 cents per month. And it is so ordered. *Ferguson* and *Hyde, CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.