ALDAH TILLMAN V. EARL N. HUTCHERSON ET AL., Appellants.—154 S. W. (2d) 104.

Division Two, September 25, 1941.

*Haysler A. Poague* and *Barkley M. Brock* for appellant.

474

*Mark W. Wilson* and *Elmer B. Silvers* for respondent.

476

ELLISON, J.

ELLISON, J.—This was an action to determine the title to a strip of land about 20 feet wide, as a part of the SE¼ of the NE¼ of Sec. 1, Twp. 41, Rg. 26, in Henry County. It was a boundary line dispute, tried in Pettis County on change of venue. The plaintiff-respondent claimed title under the ten-year Statute of Limitations, Sec. 1002, R. S. 1939, Sec. 850, Mo. Stat. Ann., p. 1121. She did not concede that appellants had the better record title before the statute ran—for she claimed (but did not prove) the strip was a part of the land covered by her muniments of title. But she asserted her adverse possession established her title to the strip whether or not it was a part of the forty-acre tract admittedly owned by her. The defendant-appellant stood on a demurrer to respondent's evidence. The finding and judgment were for respondent. There are only two assignments of error: (1) that respondent failed to make a prima facie case; (2) that the description of the land in the evidence and judgment is so vague that the judgment cannot be enforced and no valid judgment can be entered.

We have just stated the respondent's claim was based on the ten-year Statute of Limitations. This is obvious although respondent's petition alleged she owned, and that she and her predecessors in title had been in open, notorious, exclusive and adverse possession of, said SE¼ including said twenty-foot strip up to a certain boundary line fence, for more than thirty years next prior to the institution of her suit. Her claim cannot be based on the thirty-one-year Statute of Limitations, Sec. 1008, R. S. 1939, Sec. 856, Mo. Stat. Ann., p. 1131, because there is neither pleading nor proof as to when the equitable

title emanated from the Government, or about the payment of taxes. The petition further alleged that said fence—between said SE¼ and SW¼ of said quarter section—had been for more than thirty years recognized and used as the boundary line between the two forty-acre tracts.

Neither the respondent nor any of the former owners of either of the two tracts testified at the trial. But it was stipulated that respondent had record title to the SE¼ and appellant to the SW¼. And respondent proved by two old residents of the neighborhood that the successive owners of each tract had occupied, used and farmed the same up to the aforesaid fence as a boundary line for fifty years. Another witness said for twenty-eight years to his knowledge. Other than this there was no evidence as to the *animus possidendi.* Appellant, by deposition introduced by respondent, testified that he purchased the SW¼ and was informed by his vendor that the fence was not on the true line. He had a survey made and pursuant thereto erected a new fence about twenty feet over on the land occupied by respondent. This was in October, 1936, according to respondent's petition, though there was no proof of the date. However it evidently was shortly before respondent filed her suit, and no point is made on that. Appellant's chief contention is that the foregoing was insufficient to show the possession of respondent and her predecessors in title was *adverse.*

Together the litigants cite nearly fifty cases, many of which are on collateral questions such as that: the burden of proof was on the plaintiff to adduce substantial evidence showing not only possession in her and her predecessors in title, but also that the possession was actual, open, notorious, exclusive and continuous under hostile claim of ownership; and that possession under a claim of ownership up to the old fence contingent on whether it proved to be the *true* line, was not adverse possession. These propositions will be conceded. [See discussion in Bell v. Barrett (Mo. Div. 1), 76 S. W. (2d) 394.] We shall limit ourselves to the single question whether the admitted, exclusive and continuous occupancy and use of the twenty-foot strip by respondent and her predecessors in title, as a part of the SE¼— to which she concededly had title—for a period of fifty years, was sufficient evidence standing alone to make a prima facie case of adverse possession under Sec. 1002, supra.

Actuality of possession, and the intent with which dominion over land is exercised, may be shown by an almost endless combination of circumstances. [2 C. J., sec. 6, p. 54.] Ordinarily each case must be ruled on its own facts, and there is some apparent discord in our precedents. But a number of decisions discuss the abstract proposition presented here. To begin with, the general doctrine is stated in 9 C. J., sec. 199, p. 246, that long acquiescence in a fence as a boundary line will warrant a presumption that it is the true line. In an

early case, Blair v. Smith, 16 Mo. 273, 281, where the evidence showed two abutting landowners had in fact made, and for a long time abided by, a parol agreement as to their common boundary line, this court in discussing the applicable rules of law, said: "Now, this use and occupancy, without disturbance, for a time long enough for men to show that they know the boundary between their lands, shall be considered binding and conclusive as to such boundary, as well as of such understanding or agreement between them."

Another early case, Lindell v. McLaughlin, 30 Mo. 28, 33, quoting a New York decision, held it unnecessary that a party establishing or recognizing an agreed line should know the effect of it—that is, whether it diverged from the true line to his loss—or even that the agreement be express. Continuing the decision said: "An acquiescence for a length of time is evidence of such agreement. Where the line has been acquiesced in for a great number of years by all the parties interested, it is conclusive evidence of an agreement to that line." Similarly, Turner v. Baker, 64 Mo. 218, 238, declared: "The acquiescence in such cases affords ground, not merely for an inference of fact to go to the jury as evidence of an original parol agreement, but for a direct legal inference as to the true boundary line." Again, Jacobs v. Moseley, 91 Mo. 457, 463, 4 S. W. 135, 137, held "An agreement fixing a boundary line need not be shown by direct evidence. The agreement may be inferred from the acts, conduct, and, especially, from the long acquiescence of the parties." Other cases of similar tenor are cited in the margin.*

Brummell v. Harris, 148 Mo. 430, 442, 50 S. W. 93, 96(1), speaking of use and occupancy by abutting owners up to a common boundary for a long time without disturbance, said: "Such possession and use are evidence that there was an agreement to establish the line; not only to corroborate other evidence of such an agreement, *but even if there be no other such evidence.*" (Italics ours.) The same was held in Martin v. Hays (Mo. Div. 2), 228 S. W. 741, 744(4), and Diers v. Peterson, 290 Mo. 249, 256(I), 234 S. W. 792, 793-4 (1-3). And one case, Rusk v. West, 290 Mo. 433, 452 (IV), 235 S. W. 1010, 1016(4-5) said it was *stronger* evidence than proof of specific acts of ownership. Until the required period of acquiescence has elapsed, it may be true, as was held in Hamilton v. West, 63 Mo. 93, 96, that "in the absence of evidence of intention to hold adversely, the pre-

*Atchison v. Pease, 96 Mo. 566, 569, 10 S. W. 159;
Krider v. Milner, 99 Mo. 145, 149, 12 S. W. 461, 462;
Bartlett v. Brown, 121 Mo. 353, 363, 25 S. W. 1108, 1110;
Ernsting v. Gleason, 137 Mo. 594, 597-8, 39 S. W. 70;
Barnes v. Allison, 166 Mo. 96, 103-4, 65 S. W. 781, 783;
Stumpe v. Kopp, 201 Mo. 412, 423, 99 S. W. 1073, 1076;
Hanebrink v. Hengst (Mo. Div. 2), 209 S. W. 918, 919(1);
Union Twp. v. Cotton Hill Twp., 294 Mo. 538, 550, 243 S. W. 333, 336(5);
LaRue v. Bungenstock, 297 Mo. 577, 591(V), 249 S. W. 402, 406(5);
Wright v. Hines (Mo. Div. 1), 287 S. W. 471, 474(5).

sumption would be that he (the landowner) designed to hold only to the true line." But after that, the presumption would be the other way.

The law does not prescribe what the duration of the period of acquiescence shall be, other than that it be long enough to evidence mutual acceptance of the dividing line by the abutting and occupying owners as the common boundary of their respective lands; and this will depend on the circumstances of the case. An oft-quoted expression from Blair v. Smith, supra, 16 Mo. l. c. 281, declares the occupancy is evidential if it be "not for twenty years, not for fifteen years, but for a length of time sufficient to show the understanding and the intention of themselves—to show that they know their own boundary, that they are content with their own boundary." In that case the period was the "greater part of twenty years." In Turner v. Baker, supra, 64 Mo. l. c. 242, it was about seventeen years, and in Diers v. Peterson, supra, 290 Mo. l. c. 256, 234 S. W. l. c. 793 (2) over fifteen years.

This raises another question which we do not find much discussed in our cases: can the period of acquiescence required to establish an agreed boundary line be tacked onto the period of *adverse* possession prescribed by Sec. 1002; or more accurately, can the two run concurrently? The decisions heretofore cited seem to treat the *whole* period of occupancy as bringing the case within the statute. And Lindell v. McLaughlin, supra, 30 Mo. l. c. 33, reviewing the development of the doctrine in New York, says the view finally taken there was "that the length of time during which the acquiescence must continue ought to be such as would bar a right of entry under the statute of limitations"—thus indicating the two periods do run concurrently. Also this statement is made in 9 C. J., sec. 197, p. 245: "According to a number of decisions, although the presumption in favor of a boundary line acquiesced in by adjoining proprietors is strengthened by lapse of time, there is no period short of that prescribed by the statute of limitations for acquiring title by adverse possession which will render the presumption *conclusive*." (Italics ours.) But others of our cases say "claim of title . . . by virtue of an agreed line is one thing, and the claim by adverse possession is another." [Barnes v. Allison, supra, 166 Mo. l. c. 103, 65 S. W. l. c. 783; Martin v. Hays, supra, 228 S. W. l. c. 744.]

The latter statement seems to us to be correct, especially in a case such as this, where the respondent's asserted title is not based on an agreement, as such, but on a possession which is rendered adverse by the agreement. If there be evidence of an *express* agreement establishing a common boundary line, of course the possession of each owner thenceforward becomes adverse. [2 C. J., sec. 236, p. 137; 2 C. J. S., sec. 82, p. 628.] And if that possession be continued for the ten-year period of the Statute of Limitations, it ripens into a title.

But here there was no such evidence. To characterize respondent's possession as adverse when the Statute of Limitations *began* to run, she was required to prove the fence had *then* become ▮ established as the agreed boundary line by long acquiescence theretofore.

A contrary view could only be based on the theory that when the period of acquiescence has elapsed it operates retrospectively as of its own beginning date, thus allowing the two periods to run concurrently. But this would result in the owner's acquiring title by limitation although his claim of ownership was not rendered adverse by the running of the period of acquiescence, until the period of limitation had also run. If the two can run together, it amounts to saying ten years' undisputed possession and use alone satisfies the statute, which is not the law of this State. We think the period of acquiescence and the period of limitation ran consecutively, not concurrently.

▮ But since both parties enjoyed unchallenged possession and use up to the fence for fifty years, respondent amply made a prima facie case. The first forty years, or less, of acquiescence established the fence as an agreed boundary line, and thereby made the last ten years possession adverse. This is true if we can thus divide the fifty-year period into those parts. It was held in Hunnewell v. Adams, 153 Mo. 440, 55 S. W. 95, that one whose possession at its inception was not adverse but consistent with the title of the true owner, must show *when* he began to hold the land adversely. And unless he does this by some unequivocal conduct or claim his possession will not be held adverse, however long he may have occupied the land. In the instant case there was no evidence showing any change in the conduct of the adjoining owners throughout the fifty years—nothing to distinguish that during the forty years from that during the ten years.

Nevertheless, we think the Hunnewell case is not contrary to our holding here. For not long afterward another decision, Mo. Lbr. & Mining Co. v. Jewell, 200 Mo. 707, 715, 98 S. W. 578, 579 (by the same learned author, Judge JAMES B. GANTT, disclosed that the aforesaid rule applied where the adverse holder had originally claimed in *subservience* to the true title, there being a presumption that this subordinate holding continued until a change in the character thereof was brought home to the true owner. The respondent and her title predecessors here did not hold in subordination to appellants and those in their chain of title. Each claimed, and actually had title to, one forty-acre tract and not the other. But they did not know. (presumptively) the location of the true boundary line, and therefore made a practical location of it by abiding by the fence. If this does not establish adverse possession thereafter, the doctrine of agreed boundaries by long acquiescence is wiped out.

▮ Several cases cited by appellant should be noticed. In Courtner v. Putnam, 325 Mo. 924, 936, 30 S. W. (2d) 126, 131(6),

an alleged division fence had been in place for fifteen years. The opinion held there was "not the slightest evidence of an agreement, express or implied, between the owners of the adjoining lands, that the fence should constitute the boundary line between their respective lands." But in that case the adverse holder disclaimed any intention of asserting title beyond the true line, and the other party never did recognize the fence as the boundary. And in Ware v. Cheek, 201 S. W. 847, 849(2), a fence had stood for twenty-five years between the lots of the contending parties. Division I held the admitted evidence failed to show an agreed line between the two lots because it did not appear that the possession of the adverse claimant was accompanied by a claim of title, or by acts tantamount thereto. But the evidence there disclosed nothing more than mere naked possession by the respective parties, whereas here the evidence shows both occupation and farming use of the abutting tracts up to the fence by both owners. Undoubtedly to establish a fence, or other marking, as an agreed boundary line by long acquiescence, there must be some acts or conduct recognizing it as such.

Another case, Owens v. Thomas, 339 Mo. 532, 537, 98 S. W. (2d) 561, 563, follows and quotes this from Corrigan v. Early (Mo. Div. 1), 183 S. W. 574, 575 (italics ours): If the adjoining owners "supposed the fence to be on the true line, and for that reason *only* used and claimed the land up to the fence, then neither could acquire title against the other by adverse possession, for their respective possessions, *however hostile, open, and continuous,* were not under a claim of right *independent of the fence,* but were asserted and maintained because the fence was deemed to be a correct boundary of the land on both sides."

This doctrine is contrary to a long line of holdings on the questions, and both the Owens and Corrigan cases should be overruled on that point. If the above language means the owners only claimed to ▮▮▮ the fence *provided* it was on the true line, their possession was not *hostile* as the italicized language in the latter part of the quotation hypothesizes. On the other hand, if either owner claimed to the fence unconditionally his possession was adverse, regardless of his reason, so long as it was actual, open, notorious, exclusive, continuous and under hostile claim of *ownership*—not necessarily claim of *right* in the sense of moral right, or even prior legal right. In fact the term "adverse possession" implies a commencement in *wrong* against right by ouster. [Swope v. Ward, 185 Mo. 316, 324, 84 S. W. 895, 896.] Even a tortious possession by trespass may ripen into a title by adverse possession. The claim of ownership may be only "pretended" or "asserted." [Smith v. McCorkle, 105 Mo. 135, 141, 16 S. W. 602, 603; Wilkerson v. Eilers, 114 Mo. 245, 21 S. W. 514.] Neither was it necessary that respondent's claim be "independent of the fence."

482

Color of title is not necessary under the ten-year Statute of Limitations. [Cullen v. Johnson, 325 Mo. 253, 273, 29 S. W. (2d) 39, 47.]

The case to which the above Corrigan decision attributes its doctrine is Davis v. Braswell, 185 Mo. 576, 581, 84 S. W. 870, 871. But that case runs to the contrary, and is in harmony with the statements made in the last paragraph. The rule stated therein has been the law at least since Walbrunn v. Ballen, 68 Mo. 164, 166, and Cole v. Parker, 70 Mo. 372, 379. As said in a very recent case, State ex rel. Edie v. Shain (Div. 1), 348 Mo. 119, 152 S. W. (2d) 174, 176 : " 'the determining factor is not what the encroaching owner knew about the true boundary line, but what he intended to unequivocally claim was his boundary line.' The principle, as stated in all of our prior decisions, may be reduced to this : If the possessor occupies the land in question intending to occupy that particular piece as his own, his occupancy is adverse." [See also : Welsh v. Brown, 339 Mo. 235, 240, 96 S. W. (2d) 345, 347-8; Engelbrecht v. Dulle (Mo. Div. 1), 92 S. W. (2d) 150, 153-4; Pioneer Cooperage Co. v. Dillard, 332 Mo. 798, 801, 59 S. W. (2d) 642, 644(1) ; Bell v. Barrett, supra, 76 S. W. (2d) l. c. 396(3) ; Courtner v. Putnam, supra, 325 Mo. l. c. 933, 30 S. W. (2d) l. c. 130(3).]

█ Since respondent made a prima facie case of adverse possession, the burden of evidence (not the burden of proof on the whole case) shifted to appellants to disprove it by showing her possession was not adverse—as, for instance, that she did not rely on long possession and an agreed boundary line, but had claimed to the fence on condition that it was the true line. Appellants concede that here, but they stood on a demurrer to respondent's evidence at the trial, and the court decided against them. This was a law case. The respondent's petition in part followed Sec. 1684, R. S. 1939, Sec. 1520, Mo. Stat. Ann., p. 1682, and also incorporated allegations of adverse possession. But no issues of equitable cognizance were included either in it or the answer. [See Ebbs v. Neff, 325 Mo. 1182, 1191, 30 S. W. (2d) 616, 619(1).] We are therefore bound by the trial court's findings of fact. This is true although respondent introduced in evidence the deposition of appellant Earl Hutcherson, in which he said he had had a survey made and built the new fence in conformity therewith. For that did not constitute an admission that the survey was correct; much less that respondent's possession had not been adverse regardless of where the true line was.

█ But the question remains whether the description of the land in the evidence and judgment is so vague that no valid judgment can be entered, and the judgment rendered is unenforceable. Respondent's petition below claimed ownership of the SE¼ of the NE¼ of said Sec. 1, "and extending west up to a certain partition fence," theretofore *used* as a division fence between "said tract" and the SW¼ of the same quarter section. It did not locate the old fence

with reference to any Government survey or established monument. It further alleged the new fence erected by appellants was about thirty-five feet east of the old fence, and claimed the strip of land between the two. Only one witness testified to the location of the new fence. He said he had seen it and estimated it was "about 21 feet east of the old fence" at the north end, "but maybe not that far" at the south end. A lead pencil diagram of the two tracts was then exhibited to and identified by the witness, but it gave no courses, distances, government monuments or lines. The judgment described the land as follows:

"A tract of land known and described as the Southeast Quarter of the Northeast Quarter of Section 1, Township 41, Range 26, (in Henry County, Missouri) and extending west up to a certain partition fence heretofore existing and dividing the lands used by the plaintiff under her ownership of said tract, and by her predecessors in title to said tract, as the partition fence between said tract and the Southwest Quarter of the said Northeast Quarter, and particularly of a strip of land between said old fence and a certain new fence erected by the said defendants on or about the — day of October, 1936, east of said old fence;"

Since the location of the east boundary line of the SE¼ of the quarter section was questioned and not proven; and this description did not locate the new fence and the old fence with reference to each other, or to any Government survey or natural monuments, the judgment was too vague to locate the land in dispute. If the old fence was not removed after the new one was built, one could go on the ground and find it. But even so, if it is not tied in with recognized monuments, the rights of the parties will still rest partly in parol; and unless the land in dispute can be located from the written description in the judgment, the law suit has been in vain and settles nothing except that respondent is entitled to the land wherever it is.

It is universally held that judgments should describe with reasonable certainty the land adjudicated therein, both in ejectment and actions to determine title.* If there is any difference, it seems the land

*19 C. J., sec. 300, p. 1208; 51 C. J., sec. 277, p. 282;
 Williams v. Pemiscot County, 345 Mo. 415, 419(4), 133 S. W. (2d) 417, 419(6);
 Heard v. O'Dell, 335 Mo. 202, 212, 72 S. W. (2d) 491, 497;
 Point Prairie Hunting & Fishing Co. v. Schmidt (Mo. Div. 2), 44 S. W. (2d) 73, 75;
 Hecker v. Bleish, 319 Mo. 149, 176, 3 S. W. (2d) 1008, 1020(24);
 Mo. Lbr. & Mining Co. v. Hassell (Mo. Div. 1), 298 S. W. 47, 51(8);
 Jones v. Eaton (Banc), 307 Mo. 172, 183-4, 270 S. W. 105, 109(5);
 Eversmeyer v. Broyles, 280 Mo. 99, 106-7, 216 S. W. 317, 318-9(3);
 Collins v. Andriano, 264 Mo. 475, 480, 175 S. W. 194, 195;
 Howell v. Sherwood, 242 Mo. 513, 546, 568, 147 S. W. 810, 819, 826;
 City of Columbia v. Bright 179 Mo. 441, 79 S. W. 151;
 Benne v. Miller, 149 Mo. 228, 245 (III), 50 S. W. 824, 829(3);
 Brummell v. Harris, 148 Mo. 430, 436, 446 (IV), 50 S. W. 93, 94, 98(4);
 Robertson v. Drone, 100 Mo. 273, 13 S. W. 405.

484

description should be more definite in the latter, since we are coming to regard ejectment as a possessory action only. [State ex rel. Edie v. Shain, supra, 348 Mo. 119, 152 S. W. (2d) l. c. 176(2).] It is said the requirement in ejectment is to enable the sheriff, without other evidence, to execute his writ of possession. But conceivably a sheriff on the ground might execute that process on a land description which would be wholly insufficient to give adequate notice to the public and quiet the title when placed on the land records. The Brummel case cited below said a reference to "the fence now standing on the land" was a sufficient designation of a boundary. In the Robertson case a judgment awarding that part of a described eighty acres "lying south of the hedge" was held to be too indefinite. And the Eversmeyer case ruled that where a Government survey of a line or corner is in dispute and is a determinative issue, the judgment must find and state where it is. The first four decisions cited in the margin hold that where the judgment, or even the evidence, fails to locate and describe the land in litigation with sufficient certainty, the cause may be reversed and remanded to the circuit court with directions to take evidence on that question, and to have a survey made if necessary. We think that will be necessary here and so order.

Affirmed in part, and in part reversed and remanded with directions. All concur.