John A. SCOTT and Lavoy M. Scott, Husband and Wife, Appellants,

v.

Glen ROREBECK and Sarah Rorebeck, Husband and Wife, Respondents.

No. WD 40236.

Missouri Court of Appeals, Western District.

Jan. 3, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 28, 1989.

Application to Transfer Denied April 18, 1989.

James P. Valbracht, Cleaveland, Macoubrie, Cox, Valbracht and Elliott, Chillicothe, for appellants.

Andrew A. Krohn, Princeton, for respondents.

Before SHANGLER, P.J., and CLARK and COVINGTON, JJ.

CLARK, Judge.

This is a quiet title action initiated when plaintiffs below, appellants here, sought to eject defendants-respondents from a strip of land along the common border between their respective properties. Defendants counterclaimed asserting title by adverse possession. The jury found for defendants and this appeal followed. The designation of the parties below will be used.

The tracts of land owned by plaintiffs and defendants join along an east and west boundary line with plaintiffs' property lying to the south and defendants' to the north.

Until 1983, the two parcels were separated by a fence running along what purported to be the line dividing the tracts. The east and west distance of the fence line was some five hundred twenty-five feet. Commencing in 1960 when the parcels were first divided from a common ownership, the conveyances have been by a metes and bounds description. It is undisputed that the deed descriptions show the property line, not at the location of the fence, but approximately thirty-one feet to the north. It is this strip of land between the boundary set out in the deeds and the property line established by the fence which is in dispute and to which defendants asserted their claim of title by adverse possession.

Plaintiffs' land is improved with a residence and outbuildings and is largely devoted otherwise to pasture. The northerly tract occupied by defendants has commercial structures fronting on the street to the east known as Oklahoma Avenue. Some one-half to two-thirds of defendants' land is not improved and has been put to various uses for open storage and for waste materials.

The parties' record titles originate in a common owner, one Boyd Tracy. In 1960, Tracy conveyed the northerly tract to Ernest Carr who owned the land until 1972 when he sold the property to James Muecke. Defendants purchased the land from Muecke and obtained their deed dated October 11, 1985. The southerly tract was sold by Tracy in 1964 to Frances Swan who conveyed to plaintiffs on July 6, 1983.

In 1960, or earlier but at least before the sale to Swan, Tracy erected a fence running from the east to the west property lines of Tracy's then ownership, inferentially for the purpose of containing livestock in the pasture on the south tract. It was soon after this fence was built that Carr erected the commercial building on the north tract and operated a garage and farm implement dealership. The structure was built in 1960 or 1961, according to the testimony by Carr's son, Guy. At the time, Tracy had livestock on the south tract and Carr pastured his horse there. No gateway or passage was provided through the fence to permit any access between the north and south tracts.

The next owner of the north tract, James Muecke, used the existing building as a shop to make pallets and for a time in 1972 or 1973, the garage portion was used by a tenant, Leroy Corbin. Muecke continued to operate the pallet business from the structures on the north tract until the business was closed in 1984. During the ownership of the north tract by Carr, the strip in question, at least for some portion running west from Oklahoma Avenue, was used to park machinery. Later, the same use was made when Corbin operated his garage. More recently and up to 1984, Muecke stacked pallets along the fence and also disposed of scrap materials there. When defendant arranged the purchase of the property from Muecke in 1985, there was debris all along the north side of the fence remaining after the pallet business had ceased operation the year before.

Frances Swan, plaintiffs' grantor, testified for defendants. According to her, she was informed by Tracy at the time she purchased the south tract from him that

the fence marked the boundary between the north and south parcels. During her ownership from 1964 to 1983, she never made any use of the land north of the fence. She did observe the successive owners of the north tract, Carr and Muecke as well as their tenants, use the land to the fence line to park cars, trucks and machinery and for pallets and various odds and ends. When Swan made the sale to plaintiffs, there was no discussion of a boundary dispute.

Plaintiff John Scott, who had purchased the south tract while Muecke was still the owner of the north tract, suspected from the outset that the fence did not mark the true boundary of the properties. He obtained a survey in November, 1983 and confronted Muecke who responded by disputing the accuracy of the survey. Despite the lack of any agreement in the matter, Scott proceeded to remove the fence. Muecke and his grantors, the defendants, continued to claim ownership and rights to occupancy of the land to the former location of the fence, and in consequence, plaintiffs brought this action in ejectment.

The jury verdict on plaintiffs' suit to quiet title was for the defendants and no damages were awarded. On defendants claim to quiet title based on adverse possession, the jury found for defendants and assessed actual damages of $500.00 against plaintiffs. The jury also found against plaintiffs and in favor of Frances Swan on plaintiffs' third party petition for breach of warranty of title.[1]

## I.

■ In the first point raised on this appeal, plaintiffs say that the trial court erred when it permitted Frances Swan to testify over objection that she thought she owned only to the fence line and had been so informed by her grantor, Boyd Tracy. They say this was error because parol evidence is not competent to alter the unambiguous description of lands conveyed in a deed. Plaintiffs rely primarily on *Walters v. Tucker*, 281 S.W.2d 843 (Mo.1955), where the court said that absent an ambiguity in a deed, parol evidence is not admissible to show that the parties intended to convey more or less ground from that described.

The parol evidence rule would, as plaintiffs say, preclude witness Swan from testifying that the deed given to plaintiffs was other than a conveyance of the land the deed described. The Swan testimony did not say otherwise. Instead, Swan related facts concerning the actual use and occupancy of the two adjoining tracts which burdened plaintiffs' title with a potential claim by an adverse possessor. Swan gave no evidence of any actual agreement made with the adjoining landowner nor did she purport to have bargained away any of the land she undertook to convey to plaintiffs. The significance of the Swan testimony was to lay a foundation for defendants' adverse possession claim as one hostile to the title of plaintiffs.

The concept of an inferred agreement upon a boundary line based on long standing conduct by adjoining owners was examined at length in *Tillman v. Hutcherson*, 348 Mo. 473, 154 S.W.2d 104 (1941). Citing a number of authorities, the *Tillman* court concluded that where parties owning adjoining tracts of land acquiesce for a great number of years in an established line separating their properties, such possession and use constitute evidence that there was such an agreement. The acquiescence in such cases affords ground not merely for an inference of fact that there was an original parol agreement but for a direct legal inference as to the true boundary line. *Tillman*, 348 Mo. at 478, 154 S.W.2d at 106.

The evidence by witness Swan was relevant and material to prove an agreement between the predecessors in title to the north and south tracts setting the boundary line at the fence. Although defendants did not rest their counterclaim on that in-

---

1. The third party claim was reinstated when the trial court granted plaintiffs' motion for a new trial on the ground that the jury verdict for Swan was against the weight of the evidence. Swan is not a party to the appeal and upon remand, that aspect of the case will proceed to retrial.

ferred agreement, they were obligated in supporting their claim to title by adverse possession to prove that their occupancy was hostile to any claim by owners of the south tract and was under a claim of right. That claim, as discussed below, rested in fact on the inferred agreement demonstrated by the long acceptance of the fence line as the boundary. Swan's testimony was essential to this claim and was properly received.

In this case, the evidence by witness Swan and by those persons who were acquainted with the subject lands when the north tract was owned from 1960 to 1972 by Ernest Carr and from 1972 to 1985 by James Muecke established that for at least twenty-three years, the parties accepted the fence line as the actual boundary between the two tracts. Frances Swan was a competent witness to testify upon her own observations that during the nineteen years of her ownership, the owners of the north and south tracts had by their use and occupancy evidenced an understanding and agreement between them that the fence marked the true boundary between the tracts. Appellants' first point is denied.

## II.

The second point raised by appellants contends that defendants failed to make a submissible case for adverse possession. Citing *Teson v. Vasquez*, 561 S.W.2d 119 (Mo.App.1977), they say one asserting a claim to ownership of land by adverse possession must prove five elements: (1) actual possession, (2) hostile possession under claim of right, (3) open and notorious possession, (4) exclusive possession, and (5) continuous possession. Appellants deny proof by defendants of any of the five elements. Because it is related to the first point on this appeal discussed above, we consider first the contention that defen-

dants failed to prove the second element specified in *Teson*.

■ Appellants argue that defendants did not meet the conditions of the ten year statute, § 516.010, RSMo 1986, because the possession by Carr, Muecke and defendants, at least prior to 1983, was not hostile in that they claimed to own only the land covered by the descriptions in their respective deeds. They say that a claim of title based on a mistake in a boundary line is not hostile if the claimant intends only to assert ownership of the tract actually conveyed. Cited is *Brown v. Wilson*, 348 Mo. 658, 155 S.W.2d 176 (banc 1941).

If it be assumed, as plaintiffs say, that defendants and their predecessors in title intended to claim and occupy only the land covered by the descriptions in the deeds, their possession is nonetheless hostile. In such circumstance, *Brown* and numerous other cases hold that if the adverse possessor takes and holds up to a given point and claims to be the owner to such point, his possession is adverse notwithstanding the possessor's belief that such point is the true boundary line when in fact it is not. *Brown*, 348 Mo. at 666, 155 S.W.2d at 180.

The evidence in this case met the test set out in *Brown*. There was no indication that any of the prior owners of the tracts had obtained a survey, only that the fence had been long accepted as the boundary marker. Each of the successive owners, as demonstrated by the testimony of witness Swan, believed he was occupying the land which he owned. Moreover, the proof established agreement on the fence line as the property division. Once such an agreement is shown, the continued possession of the claimant thereafter is rendered adverse by the agreement.[2] *Tillman v. Hutcherson*, 348 Mo. at 479, 154 S.W.2d at 107.

2. *Tillman* also holds that the period of acquiescence in an agreed boundary line does not run concurrently to satisfy the statutory period of limitations, § 516.010, RSMo 1986, unless there is evidence of an express agreement to the boundary line. Where the agreement is implied from the conduct of the parties the cases do not specify what period of time suffices to demonstrate the implication of an agreement, only that

it be enough to show that the parties know the line agreed upon and are content with it. Once that time has elapsed, adverse possession for ten years following operates to vest title. In this case, there was at least a period of acquiescence in the boundary amounting to thirteen years which under *Tillman*, sets the running of the limitation period to have commenced in 1973.

■ Appellants also argue that defendants' evidence was insufficient because there was inadequate proof that defendants actually occupied the entire area of the disputed tract and that such occupancy as was proved was not continuous. They point to proof that when machinery was parked along the fence and when pallets and scrap lumber were placed there, it was only occasionally and then only along the easterly segment.

The exhibits introduced in evidence and the testimony show that the westerly portion of defendants' tract, including the disputed area, is essentially vacant ground without any structures or roads. Nothing upon the surface of the land serves to mark out or differentiate the portion of land north of the fence which is included in plaintiffs' deed description from the balance of the land which defendants own. There was no evidence presented to show that actual usage of the land admittedly within defendants' ownership was any different from the use made of the disputed strip. In short, the entire westerly portion of defendants' property was subjected only to occasional usage for storage of materials, scrap and debris. It was, however, all enclosed with the same fence and maintained or neglected equally. The easterly portion was, as noted earlier, used for commercial purposes from the date in 1960 when Ernest Carr built the garage and shop.

A similar fact situation was presented in *Miller v. Warner*, 433 S.W.2d 259 (Mo. 1968), where the disputed land was part of an enclosed fifty acre tract. There, as here, no physical barriers marked the disputed area from the remainder of the adverse possession claimant's land but a fence did separate it from the adjoining property. The uses made of the disputed tract and the remainder of the claimant's land were undistinguishable and consisted of cutting timber, pasturing cattle and cutting hay. The court found the common usage of all the enclosed tract sufficient to show actual and continuous possession even though the use of open areas such as farm property is occasional by nature.

The evidence in the present case showed that all of the westerly portion of defendants' land was used exclusively by them and by their predecessors in title up to the fence line for storage and parking as the need occurred and without any differentiation between the area now in dispute and the remainder. All was enclosed within a common fence. The fact that defendants did not physically occupy all of the ground north of the fence line by continually parking equipment or depositing materials along the full length of the tract did not preclude the jury from finding as it did where the evidence also showed defendants made substantially the same use of all of the property enclosed by the fence.

■ Appellants also say the adverse possession of defendants was not open and notorious in that Frances Swan had no knowledge that defendants' predecessors in title were occupying the disputed strip adversely to her record ownership. The condition of open and notorious conduct does not require proof that the true owner have actual knowledge of the claim, only that the occupancy be conspicuous, widely recognized and commonly known. *Teson v. Vasquez*, 561 S.W.2d at 127. Here, the usage made by Carr and Muecke was obvious even to a casual passerby on Oklahoma Avenue who could see at various times the machinery, pallets and materials stacked or parked along the fence. More significantly, however, the proof of acquiescence by Swan and Carr, and later Muecke, in the agreed boundary established by the fence conclusively proved that Swan had actual notice that her neighbors to the north were occupying the strip claiming it for their own.

■ Finally, as to this point, appellants say the claim to ownership by adverse possession fails because there was insufficient proof of the precise location of the land claimed. This follows, they contend, because the fence was removed by plaintiffs in 1983–1984 and was not in existence at the time of trial as proof of the claimed boundary. The contention overlooks the two survey reports introduced in evidence. Both surveys were made when the fence

was still in place and both show the then location of the fence line. According to the evidence, the fence then remained in the position where it had first been located some twenty-three years before. The surveys were ample evidence upon which the boundary line could be located.

Appellants' second point is denied.

## III.

■ In a third point, appellants complain of three verdict directing jury instructions which generally authorized the jury to return a verdict for defendants if they found defendants and their predecessors in title to have been in possession of the disputed tract "for more than ten years." They correctly observe that when plaintiffs' suit in ejectment was filed on November 5, 1985, the running of the statute of limitations in adverse possession was suspended and, thus, the jury should have been instructed that the ten year period ran prior to that date. According to plaintiffs, the jury could have construed the instructions as authorizing a verdict for defendants if their possession were proved for the ten year period prior to trial on October 6, 1987.

The first problem with plaintiffs' point of error lies in the fact that no objection was made to the instruction at trial and the point was not raised in the motion for new trial. The issue therefore may be considered, if at all, only as plain error under Rule 84.13(c). To demonstrate plain error warranting relief, plaintiff has a heavy burden to show that the instruction was not only erroneous, but that it caused such passion or prejudice as to cause manifest injustice or a miscarriage of justice. *Kaiser v. Kadean Construction Co.*, 719 S.W. 2d 892, 895 (Mo.App.1986). There was no such circumstance here.

As we have indicated previously in this opinion, the commencement of the running of the ten year period of limitation was at that point when acquiescence of the abutting landowners in the fence line boundary had prevailed for a sufficient period to create the presumption of an agreement upon the boundary. The combined time of those periods using a terminal date of November 5, 1985, as plaintiffs say the jury instruction should have specified, was twenty-five years. It is therefore manifest that both the time to satisfy the presumption and the time of limitation were oversatisfied by several years. Any misapprehension by the jury which could have resulted in a calculation using the date of trial in place of the date suit was filed would therefore have been insignificant and inconsequential. The instruction error obviously caused no manifest injustice or miscarriage of justice. The point is denied.

## IV.

In a final point, appellants contend the trial court erred when it denied their challenge for cause of veniremen Larry Kackley and Bill Ausmus. We decline to consider any issue as to venireman Kackley because the record shows Kackley was stricken on defendants' challenge. Where the venireperson did not serve on the trial jury and the complaining party has received his full complement of peremptory challenges to excuse other venirepersons, there can be no prejudice in failure by the trial court to sustain a challenge for cause.

■ As to venireman Ausmus, plaintiffs say that Ausmus should have been excused because he had heard about the suit and was acquainted with one of the surveyors who testified at trial. The contention is that plaintiffs did not receive fair and adequate consideration of their challenge to Ausmus because the court was principally concerned with retaining the venire panel at a sufficient number to avoid summoning additional venirepersons.

Broad discretion is vested in the trial court to determine the qualifications of venirepersons and a decision overruling a challenge for cause will not be set aside unless there has been a manifest invasion of a fair trial. Where the sense of the voir dire examination is that the juror would base his verdict solely on the evidence, there is no abuse of the trial court's discretion. *Hefele v. National Super Markets, Inc.*, 748 S.W.2d 800, 804 (Mo.App.1988).

In the case of venireman Ausmus, after he had expressed his concern about sitting on a jury where he was acquainted with one of the witnesses, he was asked the following question:

In other words, you would be able to listen to the instructions of the Court, listen to the evidence, and make a judgment based on the totality of the evidence, rather than what you heard already; is that correct, sir?

Ausmus answered the question in the affirmative. We perceive, on this record, no basis to conclude that plaintiffs did not receive a fair trial because Ausmus was not excused for cause or that the trial court abused its discretion in so ruling. Plaintiffs' final point is also denied.

The judgment declaring defendants vested with fee simple title to the real estate as described, declaring plaintiffs to have no title, right, claim or interest therein and awarding defendants damages of $500.00 assessed against plaintiffs is affirmed. The cause is remanded for further proceedings as to the claim against third party defendant Frances Swan consistent with the views expressed herein.

All concur.