Rosemary HENDERSON, Respondent,

v.

TOWN AND COUNTRY GROCERS OF FREDERICKTOWN, MISSOURI, INC., a Missouri corporation, Max Penner and Carolyn Penner, his wife, and Maurice B. Graham, Trustee, Appellants.

No. 22145.

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 18, 1998.

Robin E. Fulton, Schnapp, Fulton, fall, McNamara & Silvey, L.L.C., Fredericktown, for appellants.

No appearance for respondent.

CROW, Judge.

Plaintiff, Rosemary Henderson, claimed ownership of a parcel of land, record title to which was held by one of the four defendants. One of Plaintiff's theories was that she acquired ownership of the parcel by adverse possession. The trial court, hearing the case without a jury, awarded Plaintiff ownership on that theory.

The defendants appeal. Their sole point relied on avers there was no substantial evidence to support three of the five elements of Plaintiff's adverse possession claim.

In reviewing a judge-tried case, an appellate court considers the evidence in the light most favorable to the prevailing party, giving that party the benefit of all reasonable inferences and disregarding the other party's evidence except as it supports the judgment. *Marro v. Daniels*, 914 S.W.2d 16, 17[2] (Mo. App. E.D.1995); *Morrison v. Jack Simpson Contractor, Inc.*, 748 S.W.2d 716, 718[3] (Mo. App. E.D.1988).

Plaintiff testified that in 1974 or 1975, she bought a parcel of land in Ironton on which Grant's Inn—a restaurant—was situated. This opinion henceforth refers to that parcel as "the Grant's Inn parcel."

Asked whether the sellers showed her the boundaries of the Grant's Inn parcel, Plaintiff answered: "Yes. We walked what they told me was the property line and checking property along the highway in front of Grant's known as Main Street to the bridge where Stout Creek is, and basically all around the creek area. Then there was some portion at the very back of the land that they told me went across the creek."

Upon acquiring the Grant's Inn parcel, Plaintiff began operating the restaurant. She was still operating it at time of trial, August 13, 1997.

In the autumn of 1991, Sid Nickelson, a surveyor, was asked to survey a tract of land abutting the Grant's Inn parcel. The tract Nickelson was asked to survey was owned by one McLane and others. This opinion henceforth refers to that tract as "the McLane tract."

Nickelson explained that his survey was done because "there was a sale [of the McLane tract] about to take place." Nickelson prepared a plat of his survey, showing the boundaries of the McLane tract. According to Nickelson: "[I]t is my best ability identifying the property lines based on the record title as best I could be certain of the [McLane] property at that time."

Nickelson's plat was received in evidence at trial as Defendants' Exhibit C. This opinion henceforth refers to it as "Exhibit C."

In addition to showing the boundaries of the McLane tract, Exhibit C shows a building situated north of the McLane tract. The building is designated on Exhibit C as "Grant's Inn." A short distance south of the building, Exhibit C shows a triangular plot of land, the three sides of which measure: 376.20 feet; 361.33 feet; 135.00 feet. The shortest side is the west side. It appears to lie immediately east of, and abut, Main Street. The longest side begins at the north end of the shortest side and runs southeast. The third side runs back west, from the east end of the longest side to the south end of the shortest side.

On Exhibit C, Nickelson designated the triangular plot as "Tract–2." It contains .56 acre. Tract–2 lies entirely within the McLane tract. The longest side of Tract–2 abuts the southwest boundary of the Grant's Inn parcel.

Asked why he drew Tract–2 on Exhibit C, Nickelson replied:

"Tract 2 was created as we—since we found the—When we identified the property line, it was in a possible adverse area position. I was instructed to create or write the description for Tract 2 in anticipation of possibly some kind of sale or, you know, try to get it worked out. . . . Tract 2 was created as a tool to have something in place to try to get that part straightened out."

By warranty deed dated October 28, 1991, McLane and the other owners of the McLane tract conveyed it to "Town & Country Grocer of Fredericktown, Mo., Inc."[1] The deed described the McLane tract as two parcels, the second of which was Tract–2.

Plaintiff filed this suit June 7, 1994.

Plaintiff went to trial three years later on a two-count first amended petition. Each count averred Plaintiff owned Tract–2 "in fee simple absolute." Plaintiff's theory in Count II was that she had acquired ownership by adverse possession.

As reported in the first paragraph of this opinion, the trial court found for Plaintiff on the adverse possession theory.[2] The judgment declares Plaintiff "is vested with the fee simple title" to Tract–2.[3]

---

1. The pleadings refer to that entity as "Town and Country Grocers of Fredericktown, Missouri, Inc." and "Town & Country Grocers of Fredericktown, Missouri, Inc." It is the first-named defendant. As shown in the title of this opinion, there are three other defendants: Max Penner, Carolyn Penner and Maurice B. Graham, Trustee. Although the record does not reveal why Plaintiff sued the Penners and Graham, the brief filed by the four defendants explains: "Max Penner and Carolyn Penner held a Deed of Trust on the subject real estate from . . . Town & Country. . . . Graham was the Trustee on that Deed of Trust."

2. The trial court found against Plaintiff on Count I, hence this opinion need not discuss Plaintiff's theory in that count.

3. The description of Tract–2 in the judgment is the description of Tract–2 as shown on Exhibit C. The description is identical to the description of

In support of Count II, Plaintiff testified she had a husband when she bought the Grant's Inn parcel in 1974 or 1975, and the two of them bought it together. The Grant's Inn parcel was "foreclosed on" in 1981. Plaintiff avowed that her father, Robert Petroff, bought the Grant's Inn parcel at the foreclosure sale.[4]

During Plaintiff's testimony, her lawyer showed her Exhibit C. This dialogue ensued:

"Q. Now, with regard to this area that's . . . marked on that [exhibit] as being Tract 2. When you purchased the property, was any of Tract 2 being used by Grant's Inn or by the restaurant in 1974 and '75?

A. Yes, it was.

Q. And what was it being used as?

A. As a parking lot.

Q. Now, you have operated continuously then since 1974 and '75 the property and restaurant known as Grant's Inn; is that correct?

A. Right.

Q. Even though there was a period of time when the title to the property was in your father's name and not in your name; is that correct?

A. That is correct.

Q. You still operated the restaurant and were in actual possession of the property?

A. Yes."

On cross-examination, Plaintiff identified an area she had marked in blue on Exhibit C when her deposition was taken thirteen months before trial. The blue-marked area is partly on the Grant's Inn parcel and partly on Tract–2. The portion on Tract–2 appears to cover less than one-fifth of Tract–2. Cross-examination continued:

"Q. And the blue marking, as I understand it, is where you indicated the parking lot was at the time that you first purchased this property back in 1974?

A. That's correct.

Q. So at the time that you and your husband purchased the real estate, the area of the parking lot was just simply the area outlined in blue ink, true?

A. Basically, yes."

Continuing her chronology, Plaintiff recounted that in 1982—the year after her father and his wife bought the Grant's Inn parcel at foreclosure [5]—Plaintiff had "chat" hauled onto Tract–2 "to fill in the area that was low and starting to wash away some." Plaintiff produced an invoice dated April 20, 1982, to her father for 434 tons of "Trap Rock" and 4,740 tons of sand.

On cross-examination, Plaintiff identified an area she had marked in red on Exhibit C when her deposition was taken. Plaintiff avowed the red-marked area was where the "rock" was "dumped" in 1982.

The red-marked area, like the blue-marked area referred to earlier, is partly on the Grant's Inn parcel and partly on Tract–2. The portion of the red-marked area on Tract–2 encompasses most of the blue-marked area on Tract–2 and, in addition, covers more of Tract–2 than the blue-marked area. The red-marked area on Tract–2 appears to cover some four-fifths of Tract–2.

Asked whether she had "done anything else as far as any improvements or work" on Tract–2, Plaintiff responded: "In 1990 we had more creek gravel put in. . . . I would say 30 or 40 loads were put in that area . . . known as the beer garden still at that time."

On cross-examination, Plaintiff revealed the "beer garden" was constructed about 1990. It is shown on Exhibit C as being

the second parcel in the 1991 deed from McLane and others to Town & Country.

4. The trustee's deed, received in evidence at trial as Defendants' Exhibit B, is dated April 7, 1981. It conveys the Grant's Inn parcel to Robert J. Petroff and Virginia R. Petroff, his wife. The deed recites that Plaintiff and her husband signed a deed of trust April 14, 1978, securing payment of a note, and subsequently defaulted. The description of the Grant's Inn parcel in the trustee's deed does not, of course, include Tract–2. However, one side of the parcel described in the trustee's deed appears to coincide with the longest side of Tract–2.

5. Footnote 4, supra.

situated south of, and adjacent to, the building designated as "Grant's Inn." Cross-examination continued:

"Q. Did you do any other work in 1990—You said you had some creek rock brought in?

A. Yes.

Q. And then you expanded the parking lot, I believe, in 1990; did you not?

A. Yes.

Q. ... You then marked the expansion of that part in green ... did you not?

A. Yes.

Q. And that's shown on Exhibit C, also, in the green outline, true?

A. Yes."

The green-marked area on Exhibit C, like the blue-marked area and the red-marked area referred to earlier, is partly on the Grant's Inn parcel and partly on Tract–2. The portion of the green-marked area on Tract–2 encompasses most of the blue-marked area and most of the red-marked area. In addition, the green-marked area covers more of Tract–2 than either of the other two areas. The green-marked area appears to cover approximately nine-tenths of Tract–2.

Plaintiff conceded she had never had a survey made of the blue-marked area, the red-marked area, or the green-marked area on Tract–2.

By warranty deed dated November 26, 1990, Plaintiff's father and his wife conveyed the Grant's Inn parcel to Plaintiff.[6] There is no evidence of any subsequent conveyance of the Grant's Inn parcel in the record.

In addition to the evidence already set forth, Plaintiff testified she had a security light installed on Tract–2 in 1989 or 1990. The light's precise location is unrevealed. Plaintiff's testimony also included this:

"Q. Have you done anything as far as maintaining the area known as Tract 2 since you've owned it?

A. Yes, I have.

Q. And what did you do in that area—in that regard?

A. I maintained it as far as having snow removal and, of course, fill put in.

Q. Is it fair to say that you've treated that area from where Grant's Inn, the building, is located to Stouts Creek as being your property?

A. Yes, I have.

Q. Since you've owned it in 1974 and 1975; is that correct?

A. Yes....

Q. Since the time you purchased the property back in 1974 and 1975, did you maintain that ... area that's enclosed in Tract 2—

A. Yes.

Q. —by cutting weeds, keeping the grass cut and things like that?

A. Yes.

Q. And basically you've maintained that property from your building. Your building exists to Stouts Creek; is that correct?

A. Yes, all along the creek.

Q. And it's all throughout the entire area of Tract 2?

A. Yes."

Surveyor Nickelson, mentioned earlier in this opinion, testified he had been familiar with Grant's Inn "the past 20 years or longer." Nickelson asserted that to his best recollection, Tract–2 appeared to be used as a parking lot "by the Grant's Inn establishment" during that period. However, Nickelson conceded he did not survey "any parking lot area" and could not tell the court "what part of Tract 2 is being used as a parking lot."

■ Appellate review of a judge-tried case is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). There, the court construed the predecessor of Rule 73.01(c), Missouri Rules of Civil Procedure (1998), to

6. The grantors in the November 26, 1990, deed are identified as Robert J. Petroff and Jane Petroff, his wife. The deed recites that Robert J. Petroff is the "widower and survivor" of Virginia R. Petroff. As reported in footnote 4, *supra*, Virginia R. Petroff was one of the grantees in the 1981 trustee's deed.

mean that the judgment will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.* at 32[1]. In honoring that standard, an appellate court recognizes that credibility of witnesses and the weight to be given their testimony is a matter for the trial court, which is free to believe none, part, or all of the testimony of any witness. *Herbert v. Harl,* 757 S.W.2d 585, 587[1] (Mo. banc 1988).

■ Defendants [7] launch their assault on the judgment by reminding us that a party claiming ownership of a parcel of land by adverse possession under § 516.010, RSMo 1994,[8] must prove five elements. Such party must establish that his or her possession was (1) hostile, that is, under a claim of right, (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous for ten years prior to commencement of the action. *Walker v. Walker,* 509 S.W.2d 102, 106[1] (Mo.1974).

■ Defendants maintain there was no substantial evidence that Plaintiff had actual possession of *all* of Tract–2 for ten years. The importance of that, according to Defendants, is found in § 516.040, RSMo 1994, which reads:

"The possession, under color of title, of a part of a track [sic] or lot of land, in the name of the whole tract claimed, and exercising, during the time of such possession, the usual acts of ownership over the whole tract so claimed, shall be deemed a possession of the whole of such tract."

The term "color of title" in the above statute is explained in *Moran v. Roaring River Development Co.,* 461 S.W.2d 822, 829–30[2] (Mo.1970):

"Although the instrument under which color of title is claimed may be actually void and convey no title, if it purports on its face to convey the title to the land in

question by appropriate words of transfer it will constitute color of title."

Defendants emphasize that no document in evidence purported to convey ownership of Tract–2 to Plaintiff. The only conveyance in the record setting forth a description of Tract–2 is the 1991 deed from McLane and others to Town & Country.

Because Plaintiff had no color of title to Tract–2, Defendants argue that in order for Plaintiff to acquire ownership of *all* of Tract–2 by adverse possession, she was required to prove she had actual possession of the entire Tract–2 during a continuous ten-year period.

Defendants are correct.

In *Davis v. Dawson,* 273 Mo. 499, 201 S.W. 524, 527 (banc 1918), parties claiming ownership by adverse possession occupied part, but not all, of the claimed tract. They had no color of title to any of it. The court held: "Possession without color of title is confined to the part actually occupied." *Id.* at [4].

The converse of the principle is expressed in *Peterson v. Harpst,* 247 S.W.2d 663, 666[2] (Mo.1952): "While ... some writing should be shown purporting to convey land and to describe the same in order to establish 'color of title,' there is no necessity that an adverse claimant shall have had color of title to land actually possessed. It is only when the adverse claimant, in actual possession of part of land, seeks to draw to it the whole, that he must show color of title to the whole."

It follows that inasmuch as Plaintiff had no color of title to Tract–2, her claim of ownership to all of Tract–2 hinges on whether there was substantial evidence that she had actual possession of all of it for the requisite ten years.

■ Occasional entries upon, or temporary use or occupation of, a parcel of land are insufficient to establish actual possession which is necessary to manifest adverse pos-

---

7. Footnote 1, *supra.*

8. Section 516.010, RSMo 1994, reads:
    "No action for the recovery of any lands, tenements or hereditaments, or for the recovery of the possession thereof, shall be commenced, had or maintained by any person ... unless it appear that the plaintiff, his ancestor, predecessor, grantor or other person under whom he claims was seized or possessed of the premises in question, within ten years before the commencement of such action."

856 ■

session. *Brown v. Evans*, 182 S.W.2d 580, 583[10] (Mo.1944).

Viewed favorably to Plaintiff, the evidence established that all she ever did in regard to the *entire* Tract–2 was snow removal and cutting weeds and grass. The record is silent as to how frequently she did so, but it requires scant knowledge of southern Missouri weather to realize snow removal would occur in only a few months each year, and then only infrequently. While cutting weeds and grass would likely occur more often than snow removal, such mowing would be only an occasional and seasonal activity, not an everyday occurrence.

There was no other evidence that Plaintiff exercised dominion over the *entire* Tract–2 in any manner. Consequently, this court holds there was no substantial evidence to support a finding that Plaintiff was in actual possession of *all* of Tract–2 for any continuous ten-year period.[9] *Cf. Curran v. Bowen*, 753 S.W.2d 940, 944 (Mo.App. E.D.1988). Accordingly, this court holds the trial court erred in awarding Plaintiff ownership of *all* of Tract–2.

■ However, the above holding does not imply Plaintiff failed to establish ownership by adverse possession as to *any* of Tract–2.

As we have seen, the evidence favorable to Plaintiff established that at the time she and her then husband bought the Grant's Inn parcel in 1974 or 1975, the blue-marked area of Tract–2 on Exhibit C was being used as a parking lot for Grant's Inn. Nickelson avowed at trial that the parking lot had been there "the past 20 years or longer." That evidence presents the issue of whether the use of the blue-marked area of Tract–2 as a parking lot for Grant's Inn from and after 1974 or 1975 constituted actual possession by Plaintiff of the blue-marked area during that period.

In *Baur v. Chevron Chemical Co.*, 631 F.Supp. 1491 (E.D.Mo.1986), a corporation's

employees occasionally parked their automobiles on a parcel of land adjoining the corporation's property. *Id.* at 1492. A federal court, applying Missouri law, held the corporation did not thereby acquire a prescriptive easement for parking on such parcel. *Id.* at 1493. Noting that one of the elements the corporation had to establish to acquire such an easement was continuous and uninterrupted use for ten years, the court held the evidence insufficient to prove that element. *Id.* The court pointed out that the parcel was unusable for parking except in dry weather, and even then the use by the corporation's employees was not continuous. *Id.* On the contrary, said the court, the use was "sporadic at best." *Id.* at 1492.

In contrast, it is reasonably inferable from the testimony of Plaintiff and Nickelson that the blue-marked area of Tract–2 on Exhibit C was used as a parking lot for Grant's Inn regularly and continuously, not sporadically, for some twenty years prior to the commencement of this suit. Furthermore, there was no evidence that the blue-marked area was used for parking by anyone other than customers of Grant's Inn (and perhaps Plaintiff and her then husband) during that period, nor was there any evidence that anyone other than Plaintiff (and perhaps her then husband) exercised dominion over the blue-marked area during that period.

This court holds the evidence, viewed favorably to Plaintiff, is sufficient to support a finding that she was in actual possession of the blue-marked area of Tract–2 on Exhibit C for a continuous period of more than ten years prior to the commencement of this suit. In so holding, this court does not ignore Defendants' contentions that Plaintiff's possession was not "open and notorious" and that Plaintiff could not invoke the doctrine of "tacking." Those subjects are addressed later in this opinion.

9. Plaintiff filed no brief in this court. Therefore, this court does not have the benefit of Plaintiff's theory—if any—on adverse possession of the *entire* Tract–2 (or any other facet of this case). The absence of a brief by Plaintiff left this court dependent upon Defendants' brief and this court's own independent research. However, as

no penalty is imposed by statute or rule on Plaintiff for failure to file a brief, this court has endeavored to decide this case correctly on its merits. *Scheble v. Missouri Clean Water Commission*, 734 S.W.2d 541, 545[1] (Mo.App. E.D. 1987).

The next issue for this court to consider is whether the evidence is sufficient to support a finding that Plaintiff was in actual possession of the red-marked area of Tract–2 on Exhibit C for the requisite ten continuous years prior to suit.

As we have seen, the portion of the red-marked area of Tract–2 on Exhibit C encompasses most of the blue-marked area of Tract–2 on Exhibit C and, in addition, covers more of Tract–2 than the blue-marked area. Inasmuch as this court has already held the evidence sufficient to support a finding that Plaintiff was in actual possession of the blue-marked area for a continuous period of more than ten years prior to the commencement of this suit, the crucial issue regarding the red-marked area is whether the evidence is sufficient to support a finding that Plaintiff was in actual possession of the portion of the red-marked area lying outside the blue-marked area for the requisite ten continuous years prior to suit.

Viewed favorably to Plaintiff, the evidence established that in 1982 she had more than 5,000 tons of rock and sand spread on the red-marked area on Exhibit C. As noted earlier in this opinion, the red-marked area is partly on the Grant's Inn parcel and partly on Tract–2.

It is reasonably inferable that the purpose of putting the rock and sand on the red-marked area was to improve and expand the parking lot. Defendants appear to draw that inference, as their brief states: "[I]n approximately 1982, the parking lot was expanded to the area outlined in red ink on Exhibit C."

What this court said about Plaintiff's actual possession of the parking lot in regard to the blue-marked area of Tract–2 applies with equal force to the red-marked area of Tract–2. Consistent with this court's holding regarding the blue-marked area of Tract–2, this court holds the evidence sufficient to support a finding that Plaintiff was in actual possession of the portion of the red-marked area of Tract–2 lying outside the blue-marked area of Tract–2 from and after 1982. That was a continuous period of more than ten years prior to the commencement of this suit.

The next issue for this court to consider is whether the evidence is sufficient to support a finding that Plaintiff was in actual possession of the green-marked area of Tract–2 on Exhibit C for the requisite ten continuous years prior to suit.

As we have seen, the portion of the green-marked area of Tract–2 on Exhibit C encompasses most of the blue-marked area of Tract–2 on Exhibit C and most of the red-marked area of Tract–2 on Exhibit C. In addition, the green-marked area covers more of Tract–2 than the blue-marked area and more of Tract–2 than the red-marked area.

Inasmuch as this court as already held the evidence sufficient to support a finding that (1) Plaintiff was in actual possession of the blue-marked area for a continuous period of more than ten years prior to the commencement of this suit, and (2) Plaintiff was in actual possession of the portion of the red-marked area lying outside the blue-marked area for a continuous period of more than ten years prior to the commencement of this suit, the crucial issue regarding the green-marked area is whether the evidence is sufficient to support a finding that Plaintiff was in actual possession of the portion of the green-marked area lying outside the blue-marked and red-marked areas for a continuous period of more than ten years prior to commencement of this suit.

The evidence favorable to Plaintiff on that subject established that she constructed a "beer garden" about 1990. That same year she had 30 or 40 loads of "creek gravel" hauled in and expanded the parking lot beyond the red-marked area. Plaintiff identified the green-marked area on Exhibit C as the area where the 1990 activity occurred.

Assuming, *arguendo*, that the 1990 activity constituted actual possession by Plaintiff of the green-marked area lying outside the blue-marked and red-marked areas of Tract–2, such activity is insufficient to demonstrate actual possession by Plaintiff of such area for the requisite ten continuous years prior to suit. That is because only four years elapsed between the 1990 activity and the filing of this suit. Accordingly, this court holds Plaintiff failed to establish actual possession of the portion of the green-marked area lying out-

side the blue-marked and red-marked areas of Tract–2 for the required ten continuous years.

To summarize, insofar as the element of actual possession is concerned, this court holds the evidence sufficient to support a finding that Plaintiff had actual possession of the blue-marked area of Tract–2 for a continuous period of more than ten years prior to the commencement of this suit, and Plaintiff also had actual possession of the red-marked area of Tract–2 lying outside the blue-marked area for a continuous period of more than ten years prior to commencement of this suit. For convenience, this opinion henceforth refers to those two areas collectively as "the adversely held portion of Tract–2."

■ The next alleged deficiency in the evidence, according to Defendants, is that there was insufficient proof that Plaintiff's possession of the adversely held portion of Tract–2 was "open and notorious."

This court finds Defendants' position meritless. In *Scott v. Rorebeck*, 766 S.W.2d 659, 664[4] (Mo.App. W.D.1989), the court explained:

> "The condition of open and notorious conduct does not require proof that the true owner have actual knowledge of the claim, only that the occupancy be conspicuous, widely recognized and commonly known. *Teson v. Vasquez*, 561 S.W.2d [119] at 127 [ (Mo.App.1977) ]."

In *Scott*, the parcel in dispute was used to park machinery and as an area for "stacked pallets." 766 S.W.2d at 661. The opinion said: "[T]he usage . . . was obvious even to a casual passerby . . . who could see at various times the machinery, pallets and materials stacked or parked. . . ." *Id.* at 664.

In the instant case, Nickelson's testimony, viewed favorably to Plaintiff, is sufficient to support a finding that Plaintiff's use of the adversely held portion of Tract–2 as a parking lot was open and notorious. Defendants' contention to the contrary is denied.

■ Defendants' final challenge to the sufficiency of the evidence is that Plaintiff did not have continuous possession of Tract–2 for ten years and "tacking" did not apply.

Defendants base their argument on the evidence that Plaintiff's ownership of the Grant's Inn parcel, which began with her then husband in 1974 or 1975, was interrupted by the 1981 foreclosure sale to her father and his wife,[10] and Plaintiff did not reacquire ownership of the Grant's Inn parcel until her father and his wife deeded it back to Plaintiff in 1990,[11] less than four years before this suit was filed. Defendants maintain Plaintiff cannot tack her time of possession onto the Petroffs' time of possession[12] because there was no evidence that the Petroffs intended "to transfer the adverse possession claim" regarding Tract–2 to Plaintiff.

In support of that theory, Defendants cite *Beldner v. General Electric Co.*, 451 S.W.2d 65, 74 (Mo.1970), which holds that in order for a successor possessor to tack his possession onto the possession of his predecessor possessor, there must be evidence of an intent by the predecessor to convey the adversely possessed parcel to the successor.

Defendants emphasize that the 1981 trustee's deed to the Petroffs conveyed only the Grant's Inn parcel, and the 1990 deed from the Petroffs to Plaintiff conveyed only the Grant's Inn parcel. Defendants insist there was no evidence that the trustee in 1981 intended to convey Tract–2 to the Petroffs, nor was there any evidence that the Petroffs in 1990 intended to convey Tract–2 to Plaintiff.

Defendants' argument, while ingenious, is unpersuasive.

First, this court has already held the evidence sufficient to support a finding that Plaintiff was in actual possession of the portion of Tract–2 used as a parking lot for Grant's Inn from the time she and her then husband bought the Grant's Inn parcel in 1974 or 1975 until she filed this suit in 1994.

10. Footnote 4, *supra.*

11. Footnote 6, *supra.*

12. Inferably, the time of possession of Robert J. Petroff and Virginia R. Petroff, followed by the time of possession of Robert J. Petroff and Jane Petroff.

Initially, the parking lot consisted of only the blue-marked area on Exhibit C, but in 1982 the parking lot was expanded onto the red-marked area on Exhibit C lying outside the blue-marked area. That was some twelve years before Plaintiff filed this suit.

Defendants cite no authority for their hypothesis that the Petroffs' ownership of the Grant's Inn parcel from April 7, 1981, until November 26, 1990, interrupted Plaintiff's possession of the adversely held portion of Tract–2 during that period.

Inasmuch as Plaintiff had actual possession of the adversely held portion of Tract–2 for more than ten consecutive years prior to commencement of this suit, it appears unnecessary for Plaintiff to "tack" her possession onto anyone else's possession in order to acquire ownership of that land by adverse possession.

Nonetheless, assuming *arguendo* that it was necessary for Plaintiff to prove she intended that the Petroffs acquire her claim to Tract–2 when the Petroffs bought the Grant's Inn parcel at foreclosure in 1981, and to also prove the Petroffs intended to transfer their claim to the adversely held portion of Tract–2 to Plaintiff in 1990 when they deeded the Grant's Inn parcel back to her, this court holds the evidence sufficient to support such a finding.

Viewed favorably to Plaintiff, the evidence established that when she and her then husband bought the Grant's Inn parcel in 1974 or 1975, the blue-marked area on Exhibit C was being used as a parking lot for Grant's Inn. As recounted earlier, part of the blue-marked area lies on Tract–2. Plaintiff's testimony, viewed favorably to her, amply supports a finding that she believed Tract–2 was included in the land she and her husband bought.

The evidence favorable to Plaintiff also supports a finding that when she and her husband signed the 1978 deed of trust,[13] she believed the deed of trust covered all the land they had bought in 1974 or 1975, including Tract–2.

The trial court could also have reasonably found that when the 1978 deed of trust was foreclosed in 1981, the Petroffs believed they were buying all the property Plaintiff and her husband bought in 1974 or 1975 including, *inter alia,* the land on which the parking lot was situated at the time of foreclosure (the blue-marked area on Exhibit C), together with the land onto which the parking lot was expanded in 1982, the year after the foreclosure (the portion of the red-marked area on Exhibit C lying outside the blue-marked area).

That is illustrated by the activity that occurred in 1982. It will be recalled that the land on which the rock and sand was spread in 1982 included most of the blue-marked area of Tract–2 and all of the red-marked area of Tract–2 lying outside the blue-marked area. The invoice for the rock and sand was directed to Plaintiff's father. It amounted to $2,452.96. The trial court could reasonably infer Plaintiff's father would not have spent that amount to improve and expand the parking lot had he not believed he and his wife owned the land on which the rock and sand were placed.

Viewed favorably to Plaintiff, the evidence also supports a finding that when the Petroffs deeded the Grant's Inn parcel back to Plaintiff in 1990, the Petroffs intended to convey everything the Petroffs had bought at the 1981 foreclosure sale, including the land on which the parking lot was situated at the time of the foreclosure and the land onto which the parking lot was expanded in 1982 (collectively, the adversely held portion of Tract–2).

For the reasons set forth above, this court rejects Defendants' final attack on the evidence.

The result of this court's holdings is that the evidence supports a judgment awarding Plaintiff ownership by adverse possession of the adversely held portion of Tract–2, i.e., the blue-marked area of Tract–2 on Exhibit C and the red-marked area of Tract–2 lying outside the blue-marked area on Exhibit C.

■ This court is empowered by Rule 84.14, Missouri Rules of Civil Procedure (1998), to "give such judgment as the court

13. Footnote 4, *supra.*

ought to give." However, this court cannot do so on the existing record, as it provides no description of the adversely held portion of Tract–2. That is, there is no description from which a surveyor could locate and mark the adversely held portion of Tract–2 on the surface of the earth. Such a description is essential in a judgment awarding such land to Plaintiff, as a judgment affecting real estate must describe the land in question with enough certainty to support a later conveyance of it. *Cobble Trust by Sherman v. Wilson,* 928 S.W.2d 897, 898[6] (Mo.App. E.D.1996); *Pinewoods Associates v. W.R. Gibson Development Co.,* 783 S.W.2d 478, 481[4] (Mo.App. W.D.1990).

The judgment is reversed and the cause is remanded to the trial court. The trial court is directed to grant Plaintiff a reasonable time to provide that court a description of the adversely held portion of Tract–2 sufficiently specific to support a conveyance of it. If necessary, the trial court may hear addi-

tional evidence to ascertain that the description furnished by Plaintiff coincides with the adversely held portion of Tract–2. *Tillman v. Hutcherson,* 348 Mo. 473, 154 S.W.2d 104, 110 (1941). If the trial court finds the description furnished by Plaintiff is sufficient and correct, the trial court shall enter judgment awarding Plaintiff ownership of the land so described.[14] If Plaintiff, within the time granted by the trial court, fails to provide the required description, the trial court may enter judgment for Defendants.

PREWITT, P.J., and BARNEY, J., concur.

---

**14.** This court does not overlook Defendants' contention, based on *Teson v. Vasquez,* 561 S.W.2d 119, 127 (Mo.App.1977), that a party claiming land by adverse possession must establish the precise location of the land in such a manner that the boundaries may be ascertained and recognized. As this court understands Defendants, they maintain that because Plaintiff's evidence at trial did not include a survey—accompanied by a legal description—of the adversely held portion of Tract–2, the judgment should be reversed outright. This court holds outright reversal is inappropriate. Plaintiff won in the trial court, which awarded her all of Tract–2. This court has held the evidence sufficient to support an award to Plaintiff of most—but not all—of Tract–2. All that is required on remand is for Plaintiff to provide the trial court a description of the land to which she is entitled, a procedure approved in *Tillman,* 154 S.W.2d at 110. *Cf. Delay v. Douglas,* 164 S.W.2d 154, 157[12] (Mo.App.1942).